**UNITED STATES of America,
Appellee,**

v.

**Carmine LOMBARDOZZI, Appellant.**

**No. 809, Docket 72–1250.**

United States Court of Appeals,
Second Circuit.

Argued July 17, 1972.

Decided Sept. 27, 1972.

Certiorari Denied Jan. 8, 1973.
See 93 S.Ct. 907.

James M. LaRossa, New York City (Gerald L. Shargel, New York City, on the brief), for appellant.

Patrick T. Philbin, Sp. Atty., U. S. Dept. of Justice (Robert A. Morse, U. S. Atty., E. D. N. Y., Patrick F. Broderick, Sp. Atty., U. S. Dept. of Justice, of counsel), for appellee.

Before FEINBERG, MULLIGAN and OAKES, Circuit Judges.

OAKES, Circuit Judge:

Appellant pleaded guilty on March 12, 1969, to a violation of 18 U.S.C. § 371, conspiracy to violate 18 U.S.C. § 2314, by agreeing to transport in interstate commerce a stolen check having a value of more than $5,000. On June 12, 1970, he was sentenced to 2 years in the custody of the Attorney General under 18 U.S.C. § 4208(a)(2). He had moved on February 2, 1970, to withdraw his plea of guilty under Rule 32(d) as not voluntarily made and the motion was denied on June 5, 1970, after hearings in which the Assistant United States Attorney, Daniel P. Holman, and an FBI agent, Daniel Kinally, testified as to circumstances surrounding the guilty plea. His previous appeal from the denial of that motion was denied by this court on January 28, 1971. United States v. Lombardozzi, 436 F.2d 878 (2d Cir.), cert. denied, 402 U.S. 908, 91 S.Ct. 1379, 28 L.Ed.2d 648 (1971).[1] On the basis of the intervening decision in Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), he renewed his Rule 32(d) motion for the withdrawal of his guilty plea and moved alternatively, pursuant to section 2255 of Title 28, for an order vacating his sentence. From the denial of those motions, he appeals here.

Appellant's main contention is that his plea of guilty was in reliance on a promise by the prosecutor, or rather the prosecutorial "team," that any sentence resulting from his plea would be concurrent with and run no longer than the sentence he was then awaiting on a perjury charge in the New York State Supreme Court, Kings County. On his previous appeal,

436 F.2d at 880, appellant had urged that his plea was involuntary "because the government's promise that his state and federal sentences would be concurrent was the sole motivating factor for his plea . . . ." This court pointed out that the record showed that appellant himself, who was "not an uncounseled, uneducated defendant unfamiliar with the workings of the criminal law," initially approached the Government attorney and said, "I would like to take a plea of guilty to this indictment." He did this only after he had heard the testimony against him of the Government's principal witness. The plea, moreover, was accepted only after three transcribed conferences were held in court, at which the sentencing judge made it clear that he would make no recommendation to the Attorney General and that whether federal and state sentences would be concurrent would be left wholly to the Attorney General's discretion. 436 F.2d at 881. The sentencing judge in fact followed his pronouncement precisely in sentencing appellant under 18 U.S.C. § 4208(a)(2).

Appellant argues here that under *Santobello* acceptance of a plea of guilty ". . . must be attended by safeguards to insure the defendant what is reasonably due [under circumstances that will vary], but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." 404 U.S. at 262, 92 S.Ct. at 499. In *Santobello* the original prosecutor promised that there would be no sentence recommendation by the prosecution and that promise was breached by a new prosecutor who recommended the maximum 1-year sentence. In the instant case the Assistant United States Attorney denies making any promise himself, and appellant bases his argument upon assurances he claims were given him by

---

1. He also unsuccessfully appealed the denial of a motion under Fed.R.Crim.P. 35, for a reduction of his sentence on

the basis of his physical condition. United States v. Lombardozzi, 456 F.2d 1336 (2d Cir. 1972).

FBI Agent Kinally, who was a member of the prosecutorial team. Appellant relies in this connection upon Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), which held that the Government's failure to disclose a promise of leniency made to a key witness by one Assistant United States Attorney—even if unauthorized or if his superiors or associates were uninformed of the promise—necessitated a new trial under Mooney v. Holohan, 294 U.S. 103, 112, 55 S.Ct. 340, 79 L.Ed. 791 (1935), and related cases.[2]

The evidence of a promise by Agent Kinally, now deceased, on which appellant relies, is Kinally's own testimony at the evidentiary hearing on the original motion to withdraw the guilty plea as follows:

. . . there is no question in my mind that I must have convinced him that I was speaking for Mr. Hollman [sic] when I wasn't.

.    .    .    .    .    .

I was speaking to Mr. Lombardozzi only as a Government agent. I spoke to him and conveyed to him this idea of a concurrent sentence.

.    .    .    .    .    .

Q. There's no question in your mind, Mr. Kinaly [sic], that between the 7th and 12th of March (the date the plea was entered) Mr. Lombardozzi believed that the sentence would run concurrent with the State; isn't that right?

A. Well, that was his understanding. Yes, sir, he told me that.

Q. Did he also tell you that it was his understanding that he wasn't going to serve any more time?

A. Yes.

Appellant in his brief would have us construe this as an admission by Agent Kinally that he did make a "promise" to appellant that he "would serve no time in a Federal institution." We fail to see any such admission. True, Agent Kinally conceded that he convinced appellant that he was speaking for the Assistant United States Attorney when he was not, but this is different from the agent's saying that he tried to convince appellant to this effect. Rather, he was speaking to appellant "only as a Government agent." While Kinally may have "conveyed" the "idea of a concurrent sentence," this falls short of amounting to a promise; he had made a suggestion, not an assurance. Indeed, the transcript of the evidentiary hearing indicates that appellant knew Kinally could not bind the Department of Justice.[3] And assuming arguendo that appellant's "understanding," conveyed to the agent, was that the federal sentence would run concurrently with the state and that "he wasn't going to serve any more time," this again falls short of an admission of any promise as such. Indeed, Agent Kinally testified that he never guaranteed anything to appellant and that appellant never requested a guarantee.

There was no finding below of a promise made by Agent Kinally. The court

---

2. The dissenting opinion in Moore v. Illinois, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706 (1972), lends further weight to appellant's argument in reference to Agent Kinally: "When the prosecutor consciously uses police officers as part of the prosecutorial team, those officers may not conceal evidence that the prosecutor himself would have a duty to disclose." 408 U.S. at 810, 92 S.Ct. at 2576. Undeniably Agent Kinally was a part of the "prosecutorial team" in the same sense as in *Moore*; it may be, however, that in omitting any mention of the police officer the majority in *Moore* would not support this proposition.

3. Q. Did you, in fact, ever indicate to him that it was not at all within your control or the control of the F.B.I.?
   A. Mr. Lombardozzi knew that this was in the control of the Department of Justice.
   Q. Well, how did he know that; how do you know that he knew that?
   A. Because he referred to Mr. Holman several times. He understood that I was saying what I said, but he knew that I was not enough; that the Department would make the final determination, or rather the sentencing— I'm sorry—the sentencing, that was the final determination.

said, in commenting on appellant's counsel's reference to "a deal" between Kinnally and appellant at the conclusion of the evidentiary hearing:

> Let me comment specifically on that. I do not think that Mr. Lombardozzi was under any illusion that he was going to avoid spending any time in a Federal prison.
>
> I think he certainly knew when a useful bit of lubrication could be injected into a difficult situation, and he did it expecting it would move the talks along—no doubt it may have helped to do.
>
> I think that Mr. Lombardozzi thought that since the Attorney General would have the discretion, both to designate the prison as the place in which time would be served and the power under Section 4208(a)(2) to admit to parole at anytime.
>
> If that promise—if it could be called that—was carried out, he would have exactly what he had been promised, a power lodged with the Attorney General to see to it that he did not serve a single day in a Federal Prison, if that was his deal with Mr. Holman.[4]

Later on appellant's counsel started to point out that "there is no forum to assure that the Attorney General" in effect would carry out any assurance to appellant, when the court interrupted to say: "That, Mr. Lombardozzi kn[e]w. He is not naive. He had to look at his man Holman and decide, and he did." In other words, the court below was stating; as this court said in 436 F.2d at 881, "that the appellant calculated his position and made a rational decision to plead guilty." In this regard it is interesting to note, and not altogether in-significant, that before the plea was originally accepted, in response to the court's questions, appellant (and his brother who also pleaded guilty at the same time as appellant) stated that no threats prompted the pleas and that there were no "inducements" of which the court had not been informed. As stated previously, the sentencing judge had by that time made it clear that he would not direct that the appellant's federal sentence would be concurrent with the state sentence nor recommend such a procedure to the Attorney General. There is no indication that up to the time of the acceptance of the plea there was any claim on appellant's part that the prosecutorial team had assured him he would have a federal sentence concurrent with his state sentence or would serve no federal time.

We may agree with the court below that some of the agent's and possibly the Assistant United States Attorney's comments to appellant were ill-advised. We cannot construe them, however, into a *Santobello* promise, one that "can be said to be part of the inducement or consideration," 404 U.S. at 262, 92 S.Ct. at 499, that appellant would not serve any federal time. Appellant received, in short, all that he bargained for when he received a sentence under section 4208(a)(2) to the custody of the Attorney General. On this view of the case it is unnecessary to deal with the effect of Judge Dooling's apparent finding in the earlier hearing, which was affirmed by us (436 F.2d at 880), that even if there had been a "promise," appellant's decision to plead guilty was not made in reliance on it.

Judgment affirmed.

---

4. In candor, however, the court below may have thought it had found a promise when the following colloquy took place after *Santobello*, although it may have been agreeing only with counsel's proposition that the issue had been decided solely on the basis of nonreliance:

> I submit to the Court that your finding of fact and a reading of Santobello demands at this time, by following the judicial decree herein, that the motion has to be granted at this time, that the motion to withdraw the plea must be granted, because there was a promise made, there is no question about that. Agent Canelli [sic], who testified here, unequivocally stated that there was a promise. You decided it, if I may, on the issue of whether or not the defendant relied on that promise completely.
>
> The Court: That's right.