**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Kathy HUDSON, Defendant-Appellant.**

No. 78–3404.

United States Court of Appeals,
Ninth Circuit.

Dec. 26, 1979.

Stephen Arian, San Francisco, Cal., for defendant-appellant.

Robert L. Dondero, Asst. U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before WRIGHT and TANG, Circuit Judges, and PALMIERI,* District Judge.

TANG, Circuit Judge.

After her motion to dismiss was denied without evidentiary hearing, Kathy Hudson was convicted in the Northern District of California on charges of passing counterfeit obligations and possession of counterfeit obligations, in violation of 18 U.S.C. § 472. She was given a three-year suspended sentence and placed on two years probation. Hudson argues on appeal (1) that denying her motion to dismiss based on the breach of an alleged promise between a govern-

ment agent and her co-defendant was error; and (2) the evidence was insufficient to support her convictions. We affirm.

*Facts* :

Two San Francisco police officers recognized John Russo, a person under surveillance by the San Francisco police, and decided to follow him. Russo and the appellant, Kathy Hudson, entered a vehicle and drove to Mission Street where Hudson entered two different stores while Russo remained outside. Hudson did not make any purchases at either of the stores.

Russo then picked up Hudson, made two U-turns, waited briefly in a parking lot, and proceeded to Beep's Burgers. Upon arrival at Beep's, Russo parked about three car lengths from the hamburger stand. Hudson and Russo entered Beep's where Hudson ordered a 32 cent drink and paid for it with a twenty dollar bill. Hudson and Russo did not talk or act as if they knew one another while in Beep's. After receiving his order, Russo left Beep's and proceeded in a direction opposite from that taken by Hudson and also opposite from where the car was parked. Russo subsequently turned around, entered his car, and picked up Hudson who was waiting for him a short distance down the street.

The officers then went into Beep's and asked to see the bill that Hudson used to make her purchase. The manager of Beep's produced a twenty dollar bill from the back of the store where she had taken the money after clearing the front register. The bill was one of five twenty dollar bills brought from the back by the manager. One of the officers examined the bill and believed it to be counterfeit.

Upon leaving Beep's, the officers noticed Russo and Hudson driving away, made a traffic stop and arrested them. The two were handcuffed and transported to the police station. While in route, the officers

---

* Honorable Edmund L. Palmieri, United States District Judge for the District of New York, sitting by designation.

noticed Russo and Hudson moving about in the back seat. After arriving at the police station, the officers searched the back seat and found twenty-two counterfeit twenty dollar bills. Most of the bills were found folded neatly where Russo had been sitting and four others were scattered across the seat. Hudson's fingerprints were not found on the bills. When searched at the station, a twenty dollar counterfeit bill was found in Hudson's shirt pocket. This bill from Hudson's pocket bore the same serial number as the one used at Beep's and as the ones found in the back seat of the police car.

Hudson was released that day and asked to go downtown the next week to see Secret Service Agent McMann, a counterfeit currency expert. She agreed and did in fact go. Following this meeting, a complaint was filed to which Hudson entered a not guilty plea.

Prior to trial, Hudson made a motion to dismiss based upon an alleged promise by Agent McMann that if Russo cooperated in the apprehension of the supplier of the counterfeit bills, all charges against Russo and Hudson would be dropped. According to the declaration of Hudson filed with Russo's parallel motion to dismiss,

. . . I asked what was going on and they said I was under arrest and was going to court that day. I got really mad because this was not the agreement and I

was getting loud and crying. I hollered at McMann that he lied to Russo and I, and McMann yelled back, "Alright, I lied."

The court denied both Hudson's request for a hearing on the motion, as well as the motion itself. Following a jury trial, a motion for acquittal at the close of the government's case was made and denied as to both counts.

I

While it has been held recently that investigators acting in a purely private capacity do not bind the federal government to their promises of immunity from prosecution, U. S. v. Stevens, 601 F.2d 1075 (9th Cir. 1979),[1] it is a question of first impression in this circuit whether the United States Attorney is bound by the acts and promises of other federal agents.[2]

The federal courts have long been cognizant of the responsibility of federal prosecutors meticulously to fulfill their promises.[3] In the instant case, however, the issue is whether a federal agent not within the United States Attorney's office may bind the prosecution to promises made outside his authority. The Second Circuit, in United States v. Lombardozzi, 467 F.2d 160 (2d Cir. 1972), cert. denied, 409 U.S. 1108, 93 S.Ct. 907, 34 L.Ed.2d 688 (1973), addressed the issue of agents binding the prosecution, and held where an FBI agent convinced the

1. See generally United States v. Long, 511 F.2d 878 (7th Cir. 1975), cert. denied, 423 U.S. 895, 96 S.Ct. 196, 46 L.Ed.2d 128 (1975) (the federal government is not bound by the acts of state officials unless there was an agency relationship between the federal government and the state agent).

2. The Seventh Circuit declined to address this issue in United States v. James, 532 F.2d 1161 (7th Cir.), cert. denied, 429 U.S. 840, 97 S.Ct. 112, 50 L.Ed.2d 107 (1976), finding that no commitment was ever made by agents of the United States Treasury Department, Bureau of Alcohol, Tobacco and Firearms not to prosecute.

3. See Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). For instance, the Fourth Circuit held in United States v.

Carter, 454 F.2d 426 (4th Cir. 1972), that the United States Attorney for the Eastern District of Virginia was bound by the promise of the United States Attorney for the District of Columbia that, in exchange for a plea of guilty to one charge, the defendant would not be prosecuted anywhere else for anything having to do with the same transaction. 454 F.2d at 427. The Fourth Circuit, in holding the federal government to the promise of the U. S. Attorney, stated that the solution to the problem did not lie in "formalisms about the express, implied or apparent authority of one United States Attorney . . .." 454 F.2d at 428. Rather, the Carter court found the solution to be in the administrative controls within the Attorney General's power.

defendant that he was speaking for the Assistant United States Attorney, the prosecution would not be bound by the agent's alleged promise of concurrent federal and state sentences. The court noted that the defendant knew the agent could not bind the Department of Justice and the agent never guaranteed the defendant anything. Furthermore, in *Lombardozzi* the defendant, prior to sentencing, told the trial court there had been no inducements of which the court had not been informed. 467 F.2d at 163.

In the instant case, there was no allegation that the United States Attorney knew about the alleged promise or that such acts by Agent McMann were sanctioned by the prosecution. Furthermore, the record is devoid of facts or allegations suggesting Hudson relied to her detriment on any promise, such that nonenforcement would be fundamentally unfair. While we do not suggest that federal agents as a matter of law may never bind the prosecution to promises made to criminal defendants,[4] nor do we hold that a defendant may under no circumstances claim third-party beneficiary status to prosecution agreements and promises,[5] we do hold that under the facts of this case, where a federal agent is alleged to have made a promise clearly outside his authority and the defendant has incurred no detriment in reliance on this promise, fundamental fairness does not require that the United States Attorney abide by the agent's promise.[6]

## II

■■ Hudson challenges the sufficiency of evidence as to each count. As she points out, the proper test for sufficiency of the evidence is whether the jurors could rationally conclude from the evidence presented that guilt was established beyond a reasonable doubt. *United States v. King*, 552 F.2d 833 (9th Cir. 1976), *cert. denied*, 430 U.S. 966, 97 S.Ct. 1646, 52 L.Ed.2d 357 (1977). The evidence must be viewed in the light most favorable to the verdict, and the findings by the trier of fact will not be set aside unless clearly erroneous. *United States v. King*, 552 F.2d at 852. *Glasser v. U. S.*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942).

■ Hudson argues specifically that the evidence did not show that she passed the counterfeit bill at Beep's. We note, however, that two Beep's employees testified that the counterfeit bill was the one given to them by Hudson.

Hudson also claims that there is no evidence to show that she knew the bill she passed was counterfeit. Although circumstantial, the evidence tending to show her knowledge of the counterfeit nature of the bill may be inferred from her surreptitious actions which include: the indirect route taken to Beep's, the fact that Hudson and Russo did not talk to each other while in Beep's, and the fact that Hudson walked out before Russo and walked beyond the car to be picked up later by Russo down the street.

■ The sufficiency of the possession count is also challenged by Hudson. The fact that the twenty-two counterfeit bills found in the back seat had the same serial

---

4. We are not unaware of the First Circuit's opinion in *United States v. Rodman*, 519 F.2d 1058 (1st Cir. 1975) affirming the district court's dismissal of an indictment following a promise by the Securities and Exchange Commission that they would strongly recommend to the United States Attorney that no prosecution against the defendant be undertaken. In that case, the promise which was unfulfilled, was within the power of the SEC and the defendant relied to his detriment upon it. In the instant case, however, the alleged promise by Agent McMann was clearly beyond his authority and there is no allegation in the record of any reliance by Hudson on such a promise.

5. This court has, while declining to address the issue, recently noted that whether third-party beneficiary agreements must be enforced in a criminal case is a novel issue. *United States v. Scheufler*, 599 F.2d 893 (9th Cir. 1979).

6. Hudson's reliance on *United States v. Minnesota Mining and Manufacturing Co.*, 551 F.2d 1106 (8th Cir. 1977) is misplaced. In that case, the Eighth Circuit held the prosecution bound by a promise upon which the trial court found the defendants had relied to their detriment.

number as the one she had in her shirt pocket when searched at the police station tends to show not only possession, but when viewed with Hudson's other actions shows also her knowledge that the bills were counterfeit.

Upon review of the evidence, we conclude the jury could reasonably find as it did.

Affirmed.