UNITED STATES of America,
Plaintiff-Appellee,

v.

Martin James BAKER, Ray Murrell Ho-
nea, Stuart P. McLean, William Ryan
Sibbett, Edward J. Lansing, Charles E.
Peterson, Jr., John P. Holmes, Wayne
Johnson and Eugene Wright, Defend-
ants-Appellants.

Nos. 80–1085, 80–1086, 80–1088, 80–1116,
80–1117, 80–1118, 80–1206, 80–1219,
80–1208, 80–1205, and 80–1214.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 5, 1981.

Decided April 9, 1981.
As Corrected April 29, 1981.

Alexander W. Wirt, Mikkelborg, Broz, Wells & Fryer, Seattle Wash., for Baker.

Irwin Schwartz, Seattle, Wash., for Honea.

Stephen C. Schroeder, Seattle, Wash., for plaintiff-appellee.

Before, WRIGHT and NELSON, Circuit Judges, and THOMPSON, Senior United States District Judge.*

EUGENE A. WRIGHT, Circuit Judge:

## I. INTRODUCTION

In 1977 and on June 6, 1978, District Judge Boldt issued injunctions to manage the Washington salmon fishing industry while the state and the United States litigated the fishing rights of treaty Indians.[1] Defendants are nine of more than 200 fishers prosecuted for criminal contempt for violating the 1978 injunction. We affirm in part and reverse in part.

## II. NOTICE

### A. Actual Notice is Required

The 1977 and 1978 injunctions instructed all commercial salmon fishers to ascertain from a "hotline"[2] prior to fishing what areas were open for fishing by non-treaty fishers.

The 1977 injunction directed the State of Washington and the United States to serve

> by certified mail return receipt requested or otherwise copies of this preliminary injunction on all state-licensed commercial salmon net fishermen ... and to furnish the court with proof of service or written statement of the reason for the inability to serve any particular licensee.

Reprinted in *United States v. State of Washington*, 459 F.Supp. 1020, 1117 (W.D. Wash.), *aff'd sub nom.*, *Puget Sound Gillnetters Association v. U. S. District Court*, 573 F.2d 1123 (9th Cir. 1978), *vacated on other grounds and remanded sub nom.*, *Washington v. Washington State Commer-. cial Passengers Fishing Vessel Association*, 443 U.S. 658, 99 S.Ct. 3055, 61 L.Ed.2d 823, *on remand, Puget Sound Gillnetters Association v. U.S. District Court*, 605 F.2d 492 (9th Cir.) and *on remand Puget Sound Gillnetters Association v. Moos*, 92 Wash.2d 939, 603 P.2d 819 (1979).

Non-party fishers violating the 1977 order after having received notice of it could be prosecuted for criminal contempt. *Id.* Only those served personally with the injunction were convicted. *See United States*

---

\* Of the District of Nevada.

1. The 1978 injunction is found in *United States v. Washington*, 459 F.Supp. 1020 (W.D.Wash. 1978), *aff'd sub nom.*, *Puget Sound Gillnetters Assoc. v. U. S. District Court*, 573 F.2d 1123 (9th Cir. 1978), *vacated and remanded sub nom.*, *Washington v. Washington State Commercial Passenger Fishing Vessel Assoc.*, 443 U.S. 658, 99 S.Ct. 3055, 61 L.Ed.2d 823, *on*

remand *Puget Sound Gillnetters Assoc. v. U. S. District Court*, 605 F.2d 492 (9th Cir.), and *on remand Puget Sound Gillnetters Association v. Moos*, 92 Wash.2d 939, 603 P.2d 819 (1979).

2. The "hotline" was a telephone number set up by the National Marine Fisheries Service which provided day-by-day information about open and closed areas.

*v. Olander,* 584 F.2d 876 (9th Cir. 1978), *vacated and remanded sub nom., Harrington v. United States,* 443 U.S. 914, 99 S.Ct. 3104, 61 L.Ed.2d 878 (1979).

The 1978 injunction also allowed criminal prosecution of fishers who violated it after notice of it. It did not require personal service of copies of the injunctions on fishers. *United States v. Washington, supra,* 459 F.Supp. at 1130.

Defendants Stuart McLean, Edward J. Lansing, Ray Murrell Honea, Martin Jones Baker, Charles E. Peterson, William Ryan Sibbett, and John P. Holmes are non-party fishers [3] found in criminal contempt for violating the 1978 injunction. The district court found they had notice of it although none was served personally with a copy. In some cases, the court took judicial notice of the widespread publicity of Judge Boldt's 1974 decision allocating fishing resources (herein Boldt decision) [4] and concluded that all commercial fishers had notice of the 1978 injunction.

These defendants argue non-party fishers may be held in criminal contempt for violating the injunction only if they receive actual notice of the terms of the order.

The government argues that actual notice is unnecessary and that as citizens of the state or as members of tribes, these defendants are in privity with the parties in the underlying case, and are bound by the injunction and charged with the notice to the parties.

Court orders are binding upon

> the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.

F.R.C.P. 65(d).

■ We agree with the government that these defendants are bound by the 1978 injunction. In *Washington v. Washington State Commercial Passenger Fishing Vessel Association,* the Supreme Court held non-party fishers are bound by the district court's orders regulating salmon fishing because they are in privity with the parties.[5]

**3.** Parties to the underlying action were the United States, the State of Washington, Washington Reef Net Owners Association, and the Quileute, Makah, Lummi, Sauk-Suiattle, Samish, Snohomish, Steilacoom, Stillaguamish, Nooksack, Suquamish, Nisqually, Muckleshoot, Squaxin Island, Skokomish, Lower Elwha Band Clallam, Snoqualmie, Upper Skagit River, Tulalip, Quinault, Puyallup, Duwamish, Jamestown Clallam, Port Gamble Clallam, Swinomish Tribal Community, Aboriginal Swinomish, Hoh and Yakima Nation Tribes. The Puget Sound Gillnetters Association, and the Washington State Commercial Passengers Fishing Association were parties to the appeal but not to the district court action.

**4.** *United States v. State of Washington,* 384 F.Supp. 312 (W.D.Wash.1974), *aff'd,* 520 F.2d 676 (9th Cir. 1975), *cert. denied,* 423 U.S. 1086, 96 S.Ct. 877, 47 L.Ed.2d 97 (1976), *vacated sub nom., Washington v. Washington State Commercial Passenger Fishing Vessel Association,* 443 U.S. 658, 99 S.Ct. 3055, 61 L.Ed.2d 823, *on remand sub nom., Puget Sound Gillnetters Association v. United States District Court,* 605 F.2d 492 (9th Cir.) and *on remand sub nom., Puget Sound Gillnetters Association v. Moos,* 92 Wash.2d 939 (1979).

**5.** In our view, the commercial fishing associations and their members are probably subject

> to injunction under either the rule that nonparties who interfere with the implementation of court orders establishing public rights may be enjoined, *e. g., United States v. Hall,* 472 F.2d 261 (CA5 1972), cited approvingly in *Golden State Bottling Co. v. NLRB,* 414 U.S. 168, 180, 94 S.Ct. 414, 423, 38 L.Ed.2d 388, or the rule that a court possessed of the res in a proceeding *in rem,* such as one to apportion a fishery, may enjoin those who would interfere with that custody. *See Vendo Co. v. Lektro-Vend Corp.,* 433 U.S. 623, 641, 97 S.Ct. 2881, 2892, 53 L.Ed.2d 1009. But in any case, these individuals and groups are citizens of the State of Washington, which was a party to the relevant proceedings, and "they, in their common public rights as citizens of the State, were represented by the State in those proceedings, and, like it, were bound by the judgment." *Tacoma v. Taxpayers,* 357 U.S. 320, 340–341, 78 S.Ct. 1209, 1220–1221, 2 L.Ed.2d 1345. Moreover, a court clearly may order them to obey that judgment. *See Golden State Bottling, supra,* 414 U.S. at 179–180, 94 S.Ct. at 422–423.

*Washington v. Washington State Commercial Passenger Fishing Vessel Association,* 443 U.S. 658, 692–93 n.32, 99 S.Ct. 3055, 3078–79 n.32, 61 L.Ed.2d 823 (1979).

However, we hold that non-party fishers must have actual notice of it before they can be held in criminal contempt. Persons bound by a court order may be found in criminal contempt for violating it only if the order is clear and definite, and the contemnor has knowledge of it. *United States v. Powers*, 629 F.2d 619, 627 (9th Cir. 1980).

Generally, non-parties must have actual knowledge. *See Vuitton et Fils S.A. v. Carousel Handbags*, 592 F.2d 126, 129 (2d Cir. 1979); *United States v. Griffin*, 525 F.2d 710, 713 (1st Cir. 1975), *cert. denied*, 424 U.S. 945, 96 S.Ct. 1414, 47 L.Ed.2d 351 (1976); *United States v. Hall*, 472 F.2d 261, 268 (5th Cir. 1972); *McGraw-Edison Co. v. Preformed Line Products Co.*, 362 F.2d 339, 344 (9th Cir.), *cert. denied*, 385 U.S. 919, 87 S.Ct. 229, 17 L.Ed.2d 143 (1966).

The same rule applies to non-parties in privity with parties. In *Puget Sound Gillnetters Association, supra*, 573 F.2d at 1133 (1979), this court held non-party fishers in privity with the parties could be found in criminal contempt for violating the court's injunction regulating salmon fishing if they had actual notice of the order. *Id.* at 1133. *See also NLRB v. Sequoia District Council of Carpenters*, 568 F.2d 628, 634 (9th Cir. 1977) (non-party union members were bound by an order served on the union's attorney and were held in criminal contempt for violating it because they knew the order had issued and may have had actual notice of its terms).[6]

Due process protections attach to contempt proceedings. *Powers, supra*, 629 F.2d at 625; *In re Grand Jury Proceedings*, 600 F.2d 215, 217 (9th Cir. 1979). The Supreme Court recognizes that actual knowledge of a duty to act or proof of the probability of such knowledge is sometimes necessary to satisfy due process. In *Lambert v. California*, 355 U.S. 225, 229, 78 S.Ct. 240,

243, 2 L.Ed.2d 228 (1957) the Court held a Los Angeles ordinance requiring felons to register with the city violated due process. The act of being in Los Angeles was not *per se* blameworthy. *Id.* The court held the felon could not be punished criminally unless something alerted him to the consequences of his act. *Id.*

Requiring non-parties in privity with parties to have actual notice of the injunction before convicting them of criminal contempt satisfies due process. Fishing in Puget Sound is not *per se* blameworthy. Requiring a non-party fisher to have actual notice of the court's injunction before he can be found in criminal contempt precludes conviction when he is wholly unaware of any wrongdoing. *Cf. United States v. Seale*, 461 F.2d 345, 366 (7th Cir. 1972) ("an absence" of any warning that borderline conduct is regarded as contumacious could be fatal to a contempt citation).

## B. *What Constitutes Actual Notice*

Our holding that criminal contempt requires non-parties to have had actual notice of the order does not end our inquiry. We must determine what constitutes actual notice.

The district court took judicial notice of the widespread publicity about the Boldt decision and concluded that the whole state had notice of the 1978 injunction. The government contends this satisfies due process.

In the alternative, the government argues that fishers are charged with implied or inquiry notice because their industry is highly regulated.

Defendants argue that notice must be shown by personal service or circumstantially as suggested by the government in its memorandum to the district court.[7] They

---

**6.** *But see, Shakman v. Democratic Organization of Cook County*, 533 F.2d 344, 352 (7th Cir.), *cert. denied*, 429 U.S. 858, 97 S.Ct. 156, 50 L.Ed.2d 135 (1976) (court finds city employee had actual notice of injunction issued against city but doubts Rule 65(d) requires him to re-

ceive actual notice before he can be held in civil contempt).

**7.** In its *Memorandum Regarding Binding Effect of Injunction on Third Party Fisherman*, filed after the contempt cases were transferred to Judge Tanner, the government stated

contend it may not be assumed through judicial notice.

### 1. *Judicial Notice*

██ We agree with defendants that taking judicial notice of their knowledge of the injunction based on unproven, widespread publicity was improper. Federal Rule of Evidence 201 requires

> (b) *Kinds of facts.* A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.

A non-party fisher's notice of the 1978 injunction is not a proper subject for judicial notice. It is a central and disputed issue. Evidence introduced by defendants contradicts the district court's assertion that anyone who is a gill netter and a resident of Washington must know of the injunction. The source of publicity referred to by the court, the news media, cannot be said to be unquestionably accurate.

Finally, nothing was introduced from which widespread knowledge of the order could be inferred. There was no evidence of broad public knowledge of the 1978 injunction or that a duty to call the hotline was common knowledge in the community.

We agree with the First Circuit's cautious approach to this issue. In *Griffin* the court noted "it might be appropriate" to judicially notice a person's knowledge of a court order based on publicity. 525 F.2d at 713 n.12. However, it declined to take judicial

notice of a citizen's notice of a federal busing order because the government failed to introduce evidence of "broad neighborhood knowledge of publicity" from which awareness could be inferred. *Id.*

### 2. *Inquiry Notice*

The government also argues that those participating in a regulated industry are charged with notice of its regulations. We disagree.

██ The commercial salmon fishing industry in Puget Sound has a long history of government regulation. *See United States v. Raub,* 637 F.2d 1205 at 1211 (9th Cir. 1980). Although this constitutionally validates warrantless administrative searches, *Marshall v. Wait,* 628 F.2d 1255, 1258 (9th Cir. 1980), *Raub, supra,* it does not mean fishers should be held to inquiry notice about the existence of the 1978 injunction. Pervasive regulation does not eliminate the government's "high" burden of proving the contemnor's knowledge. *See United States v. Hall,* 198 F.2d 726, 729 (2d Cir. 1952), *cert. denied,* 345 U.S. 905, 73 S.Ct. 641, 97 L.Ed. 1341 (1953).

### 3. *Actual Knowledge of the Order*

██ Based on the personal service requirement in the 1977 injunction, defendants argue that personal service is required for actual notice. While it may be desirable, it is not necessary.

██ In civil contempt proceedings, formal or personal service is not required. *Vuitton et Fils S.A., supra; Douglass v. First National Realty Co.,* 543 F.2d 894, 897

---

The evidence from which defendant's knowledge can be inferred here may consist of personal service of a copy of the June 6, 1978 injunction on the defendant or on a person of suitable age and discretion at defendant's residence. It may consist of service on defendant, or on a person at defendant's residence, of a copy of the proposed injunction that was later entered on June 6, 1978. The terms of the order actually signed were virtually identical to the terms of the proposed order, so far as what is required of those subject to the order. Other circumstantial evidence of defendant's knowledge may exist

as well: proof of mailing a copy of the injunction to the same address as the one to which defendant's commercial fishing license was mailed; proof of the substantial number of the commercial fishermen who actually were personally served; proof of display advertisements of the terms of the order, placed in Puget Sound area newspapers; proof of statements and admissions of the defendant; and proof of the difficulties in personal service encountered by the U.S. Marshal's office in the attempt to serve every commercial fisherman licensed by the State of Washington.

(D.C. Cir. 1976). Knowledge of the order suffices. *Vuitton et Fils S.A., supra.*

This holds true for criminal contempt. Although several courts have found that contemnors had actual notice of the terms of the court order, they do not hold that such finding is necessary. Knowledge of the order is enough. *See Puget Sound Gillnetters Association, supra; Douglass, supra,* 543 F.2d at 897 n. 15; *United States v. McAndrew,* 480 F.Supp. 1189, 1194 (E.D.Va. 1979).

While we find personal service is not required, we do not condone the absence of notice procedures in the 1978 injunction. Where a court issues a broad injunction affecting hundreds of non-parties scattered over a large geographical area, it should entertain suggestions for procedures for notification and specify the procedures to be followed. This would promote adherence to the injunction because it would ensure that most non-parties receive notice of it. Specified procedures would also aid in the prosecution of violators by eliminating questions about notice.[8]

### III. STANDARD OF PROOF FOR VIOLATION OF AN INJUNCTION

■ One must have notice of a court order and violate it before he can be held in criminal contempt. Defendants argue that the government must prove beyond a reasonable doubt the violation was intentional. We agree.

This circuit recently reaffirmed that criminal contempt requires a contemnor to know of an order and willfully disobey it. *Powers, supra,* 629 F.2d at 627 (citing *Chapman v. Pacific Tel. & Tel. Co.,* 613 F.2d 193, 195 (9th Cir. 1979)).[9] Willfulness and awareness of the order must be shown be-

yond a reasonable doubt. *Powers, supra,* 629 F.2d at 626 n.6; *United States v. Greyhound Corp.,* 508 F.2d 529, 531 (7th Cir. 1974).

Willfulness is defined "as a volitional act done by one who knows or should reasonably be aware that his conduct is wrongful." *Greyhound Corp., supra,* 508 F.2d at 531–32, *Accord United States v. Cunningham,* 599 F.2d 120, 128 (6th Cir. 1979) and all cases cited therein.

■ Willfulness may be inferred from admitted evidence. *Greyhound, supra,* 508 F.2d at 532. A good faith effort to comply with the order is a defense, although delaying tactics or indifference to the order are not. *Richmond Black Police Officers Association v. Richmond,* 548 F.2d 123, 129 (4th Cir. 1977); *Greyhound Corp., supra,* 508 F.2d at 532.

### IV. SUFFICIENCY OF THE EVIDENCE

Criminal contempt proceedings require proof beyond a reasonable doubt. *Powers, supra,* 629 F.2d at 626 n.6. Accordingly, this court must review the notice and intent findings for sufficiency of evidence. *United States v. Hudson,* 609 F.2d 1326, 1329 (9th Cir. 1979). The evidence must be viewed in the light most favorable to the government, and the findings of the trier of fact not set aside unless clearly erroneous. *Id.*

#### A. *Ray Murrell Honea and Martin James Baker*

Honea, a non-Indian fisher, called the hotline before fishing on October 9, 1978 and he checked the tide current table. Before setting his nets, he checked visually the direction of the tide at the buoy separating

---

8. The government should consider these possibilities for giving notice when seeking future injunctions regulating the fishing industry: the availability of ship-to-shore radios for contacting a hotline; publication of notices of the injunctions in shore locations frequented by fishers, such as hiring halls, marinas, packing plants, post offices, and meeting halls for fishers' associations; and publication in local newspapers.

9. *But see United States v. Prugh,* 479 F.2d 611, 613 (8th Cir. 1973) (Defendant found in criminal contempt for engaging in activities prohibited by consent decree; government was not required to show he knew he was violating the terms of the injunction; proof he intentionally conducted the proscribed stock transaction was enough).

the open and closed areas. The chart and the flow at the buoy indicated he would drift in a northerly direction and remain in the open area.

Baker, a welder and Honea's foster brother, was assisting Honea in the boat. He knew which areas were open and closed but disclaimed any knowledge of the 1978 injunction or Boldt decision.

After setting the nets, Honea's boat and net drifted slowly north for two hours. Then an unusual current and tide caused the boat and net to drift back towards the buoy and closed area. He cut the net loose. Within one hour, the net was within 50 feet of the buoy. Honea and Baker worked to keep the net off the buoy. Once it was past the buoy and into the closed area, they began to pick it. Honea testified it was unsafe to pick it when it was near the buoy because the net could have become entangled with the buoy, damaging both the net and buoy.

The Coast Guard found Honea's boat drifting onto his net and Honea and Baker picking it 1.2 miles into the closed area.

■■ The evidence is sufficient to prove Honea and Baker had notice of the injunction. However, it does not prove beyond a reasonable doubt that they intentionally violated the injunction. They made a good faith effort to comply. The government offered no evidence to rebut their testimony that they drifted unintentionally into the closed area and began picking the net as soon as it was safe. We reverse their criminal contempt convictions.

### B. Charles E. Peterson, Jr.

■■ On October 9, 1978, a fisheries agent found Peterson, a fisher from Neah Bay, fishing with a gill net in an area in Hood Canal closed to non-treaty fishers. Peterson told the agent he believed he had a treaty right to fish there because the Port Gamble Clallam Tribe fished for sockeye salmon near Neah Bay in the summer.

The evidence is sufficient to prove Peterson had notice of the injunction and violated it intentionally. His conviction is affirmed.

### C. John P. Holmes

On September 17, 1978, a fisheries agent found Holmes fishing with a gill net in an area closed to all fishers. When asked for identification, Holmes demanded to see the agent's identification. He turned on a tape recorder, stating that his attorney advised him to get the names of and to tape conversations with boarding agents because he intended to sue.

The government served a copy of the proposed injunction at Holmes' home three months before the injunction issued.

The evidence is sufficient to prove Holmes had notice of the injunction and violated it intentionally. His conviction is affirmed.

### D. William Ryan Sibbett

A fisheries agent found Sibbett's fishing vessel in an area closed to non-treaty fishers on September 17, 1978. The agent testified he saw someone on the boat pulling a gill net from the water, but did not see the net in the water.

As a Coast Guard vessel approached, Sibbett's boat began to move away rapidly. It stopped after the Coast Guard vessel activated its blue light.

The agent boarded the vessel and saw a wet net and fresh fish. When he asked Sibbett if he was a treaty Indian, Sibbett replied that he was an American citizen.

The next day, Sibbett reported he had caught a Coast Guard vessel in his gill net the previous evening. He told the Coast Guard officer he had planned to transfer fish to another vessel if a marshal had been aboard the Coast Guard vessel.

The same fisheries agent found Sibbett fishing in a closed area a second time on November 1, 1978. Sibbett told the agent he would continue to fish whenever the Indians fished because he did not believe anything would happen to him for violating the order.

Sibbett's third offense occurred on November 13, 1978. His boat was found in an

area closed to all fishers. His net was in the water and salmon were aboard the vessel.

There is sufficient evidence to prove Sibbett had notice of the injunction and violated it intentionally on each occasion.

### E. Stuart McLean

McLean, a non-treaty fisher, was found aboard a gill net fishing vessel in an area closed to all fishers. The gill net was deployed and contained fish. McLean's partner was a Sioux Indian. The Sioux Indian Tribe was not a party to the Boldt decision.

McLean told the boarding agent he knew he could not help a treaty fisher exercising a treaty right in an area open to treaty fishers. He also said he was helping only because the net had been caught in a riptide.

There is sufficient evidence to prove McLean had actual notice of the injunction and violated it intentionally. His conviction is affirmed.

### F. Edward J. Lansing

Lansing, a non-treaty fisher, was found fishing in an area closed to non-treaty fishers in October 1978. The boarding agent served him with a copy of the injunction. Lansing produced identification with a Bellingham address.

A copy of the proposed injunction sent by certified mail to that address in February 1978 was returned, marked "return unclaimed."

The evidence is insufficient to prove Lansing had actual notice of the injunction. His criminal contempt conviction is reversed.

## V. WILLIAM RYAN SIBBETT

Sibbett raises several other challenges to his convictions. We conclude all are without merit.

10. Petty offenses involve a penalty not exceeding 6 months imprisonment or a fine over $500 or both. 18 U.S.C. § 1(3).

### A. Speedy Trial Act

Sibbett alleges a violation of the Speedy Trial Act because (1) indictments were not filed within 30 days of the date of arrest; (2) no arraignment was held; and (3) his trial was delayed.

We do not reach these contentions because Sibbett's offenses were petty ones [10] to which the Speedy Trial Act does not apply. 18 U.S.C. §§ 3161(b), 3172(2).

### B. Miranda Warnings

Sibbett argues his statements are inadmissible because the agents boarding his vessel failed to give *Miranda* warnings. We disagree.

Generally, routine Coast Guard boarding of vessels does not create a custodial situation requiring *Miranda* warnings before interrogation. *United States v. Warren*, 578 F.2d 1058, 1070 (5th Cir. 1978), *cert. denied*, 446 U.S. 956, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980). The boardings of Sibbett's boat by fisheries agents also lacked a custodial atmosphere.

On the first stop, the agent called across the water, "are you involved in treaty fishery?" Sibbett responded he was not. The agent boarded and gave *Miranda* warnings before questioning him.

On the third stop the agent boarded the vessel, issued Sibbett a citation but did not give *Miranda* warnings. Sibbett volunteered he would continue to fish whenever he chose.

On no occasion were weapons displayed and on each, Sibbett was allowed to go on his way.

### C. Search and Seizure

Sibbett argues the boardings of his vessel violated the Fourth Amendment because they occurred without probable cause or authority.

Sibbett was placed on 2 years probation for the first violation; fined $500 for the second; and sentenced to 15 days imprisonment for the third.

■ We disagree. The warrantless boardings were valid because they fell within the *Biswell-Colonnade* exception to the warrant requirement. It applies to administrative searches of enterprises that traditionally have been regulated closely. *Raub, supra,* at 1208. The commercial fishing industry in Puget Sound is such an industry. *Id.* at 1211.

We find the government had probable cause to board Sibbett's vessel. On three occasions, Sibbett was fishing in an area closed to non-treaty fishers. On the first, he retrieved his net and fled as the government vessel approached. On the second, the agent knew the boat from the earlier violation. On the third, the agent saw a deployed gill net.

#### D. *Bail Pending Appeal*

■ Finally, Sibbett argues the district court erred by refusing bail pending appeal. This issue is moot because he has served his 15-day sentence.

Sibbett's criminal contempt convictions are affirmed.

### VI. WAYNE JOHNSON AND EUGENE A. WRIGHT

The 1978 injunction ordered that fishing by the Makah Tribe "on rivers east of the Hoko to Port Crescent" shall be subject to the control and regulation of the Lower Elwha Tribe. *United States v. Washington, supra,* 459 F.Supp. at 1067. The Pysht River is in that area.

The injunction also excepted from its regulations "persons exercising treaty fishing rights in accordance with the orders of this court." *Id.* at 1117.

On October 9, 1979, a fisheries agent found Johnson and Wright, Makah Indians, fishing with a gill net on the Pysht River. Hotline message 25 stated the river was closed to non-treaty fishers.

Both men told the agent they were familiar with the Boldt injunction. The agent testified that Wright asked how the agent caught them and whether the agent was getting smarter or was he getting dumber.

After retrieving the net, Wright said he was an Elwha. When the agent stated he knew they were Makahs, Wright said, "it never hurts to try". Johnson said it was the last time he would fish in daylight.

Both were convicted of criminal contempt.

Wright and Johnson argue that the government bears the burden of proving they do not fall within the proviso excepting persons exercising treaty fishing rights.

We agree but hold that the burden does not shift to the government until Wright and Johnson raise the exception. *See United States v. Black,* 512 F.2d 864, 867 (9th Cir. 1975).

■ It is a well settled rule

that a defendant who relies upon an exception to a statute made by a proviso or distinct clause, whether in the same section of the statute or elsewhere, *has the burden of establishing and showing he comes within the exception.*

(emphasis added; citations omitted) *United States v. Henry,* 615 F.2d 1223, 1235 (9th Cir. 1980). In *United States v. Olander,* 584 F.2d at 881, this court held specifically that a fisher charged with criminal contempt had the burden of proving he fell within the proviso in the injunction which excepted persons exercising treaty fishing rights.

Wright and Johnson failed to raise the exception. They presented no evidence that they were exercising treaty fishing rights. *See Henry, supra.*

Wright and Johnson also argue there is insufficient evidence they were fishing for salmon. Although they were using a gill net, they caught only crab.

The agent testified a gill net being used in that place and time was being used for salmon.

■ These defendants failed to raise the exception and there is sufficient evidence to prove they were fishing for salmon. Their convictions are affirmed.