**UNITED STATES of America, Plaintiff,**

v.

**Dustin Michael ELLIOTT, Defendant.**

**No. CR 04–16–M–DWM.**

United States District Court, D. Montana, Missoula Division.

Jan. 11, 2005.

tion for Preliminary Injunction.

Josh Van de Wetering, Assistant U.S. Attorney, Missoula, MT, for Plaintiff.

Wendy Holton, Helena, MT, for Defendant.

## ORDER

MOLLOY, Chief Judge.

This case is about bad judgment. Dustin Elliott exercised very bad judgment on December 12, 2003 when he was stopped at Garrison Junction because he was one of three people involved in selling two pounds of marijuana to a state undercover agent. When this sale took place, according to joint drug task force Agent Steven Spanogle, federal prosecution was not warranted for the small amounts of marijuana involved. Spanogle testified that he probably told Elliott on a number of occasions that such a small amount of marijuana would not be subject to federal prosecution under the referral rules in play at the time. The assurances were necessary because Elliott would not agree to cooperate with further investigation unless he had some assurance the case was not "federal."

Elliott then exercised what turns out to be more bad judgment. He believed law enforcement officers were telling the truth and that he would not be subject to federal prosecution. So, Elliott cooperated with the state investigators. His two cohorts immediately spilled their guts to save their respective hides but they had no useful information to help the agents climb the drug distribution food chain to the real culprits in the marijuana distribution scheme. Elliott did. Based on his knowledge, and after the assurances about federal referrals, confident that he would not be charged in federal court, he cooperated fully.

Because Elliott cooperated, the police were able to identify two or more distributors, and to obtain evidence of large enough quantities of marijuana that the case finally did satisfy federal prosecution minimums. So, despite Elliott's confidence that he would not be facing the ogre of federal prosecution, once enough marijuana had been discovered through the criminal investigation based on his disclosures and cooperation, the case was presented to the federal grand jury. Elliott was indicted in federal court as a direct result of his cooperation.

In this case Agent Spanogle was being truthful when he told Elliott that two pounds was not enough marijuana to warrant federal prosecution under existing referral standards. Furthermore, Spanogle had the courage to testify at the hearing in this case that he did not believe Elliott *would* be prosecuted in federal court, and, that he did not think Elliott *should* have been prosecuted in federal court. But, here we are.

The problem presented is whether the decision to refer the case to the grand jury, and to pursue Elliott's prosecution, is so fundamentally unfair that the case should be dismissed. See *United States v. Williams*, 780 F.2d 802, 803 (9th Cir.1986). I have struggled in seeking a just answer

to this question. However, I am convinced that while this case is more properly a state prosecution, I have no legal basis to dismiss it.

**Discussion**

### 1. Defendant's Argument

Elliott argues that the indictment should be dismissed because he performed his end of the deal by participating in a sting operation that netted the government a large marijuana supplier. He argues that instead of getting what he bargained for, a deferred imposition of sentence in the state courts, he ended up being prosecuted in federal court. That reality is what he thought he bargained away when he agreed to cooperate with the state agents. He argues that had the government upheld the bargain by deferring a two pound marijuana case to the state, he would have been able to complete his undergraduate education and attend medical school.[1]

### 2. The Government's Argument

The United States argues that even if Agent Spanogle had promised a "particular sentence," Spanogle is without authority to bind the United States. Spanogle is a state agent working on state prosecutions and at the time of Elliott's cooperation Spanogle was not assigned to any task force that included federal agents. Thus the argument goes, he could not have bound the United States to "his 'agreement' with the defendant even if he had wanted to." (U.S. brief pg 2). The United States extends the argument by asserting that even if Spanogle was a federal agent, he could not bind the United States Attorney's Office. The prosecutor does acknowledge that an exception to the "non binding" rule exists, even where the United States Attorney was not a party to the cooperation agreement, if breach of the agreement renders the prosecution fundamentally unfair, citing *Williams*, supra, and *United States v. Hudson*, 609 F.2d 1326 (9th Cir.1979). (S brief pg 3).

### 3. Analysis

Here the uncontroverted testimony of Agent Spanogle is as follows: 1) before Elliott's cooperation took place, Elliott would not have been prosecuted in federal court because he was caught with so little marijuana the United States Attorney would not have taken the case for referred prosecution in federal court; 2) Elliott's two cohorts had no evidence to give the investigating agents that would have allowed them to go up the drug distribution food chain; 3) Spanogle did describe to Elliott scenarios he was aware of in state marijuana prosecutions that resulted in deferred state prosecutions though he carefully avoided making a "deal" he knew he could not make for the county attorney; 4) Elliott was very specific in his concern about avoiding federal prosecution; 5) without Elliott's cooperation the state investigation could not have gone forward and upward in identifying and prosecuting the marijuana distribution network; 6) Spanogle did not think Elliott would be prosecuted in federal court; 7) Spanogle does not think Elliott *should* be prosecuted in federal court; and, 8) Elliott cannot be held responsible for more than two pounds of marijuana in the federal prosecution.[2]

---

1. Elliott is a chemistry major at Carroll College who maintains between a 3.9 and 4.0 GPA. A federal conviction will likely bar him from medical school matriculation.

2. Two pounds of marijuana sets an offense level of 8 according to the federal sentencing guidelines, § 2D1.1 (At least 250 G but less than 1 KG of marijuana). With a criminal history of 1, that means the most Elliott would be looking at is 6 months of incarceration. One must question the futility of a federal felony conviction under the circumstances involved here. The question that needs to be answered is "Why is this a federal case?" If it is a federal case to deter, what

Elliott also signed an agreement stating he knew there were no binding promises regarding any state prosecution. The United States Attorney for the District of Montana considered, but refused dismissal or a deferred federal prosecution.

### a. The Williams case

Thomas Williams was convicted of theft and conspiring to sell government property. He worked as an administrator for the Veterans Administration. After his arrest, a personnel director of the VA promised him that if he resigned his job, the VA attorney would recommend dismissal of the charges to the United States Attorney. Williams resigned but the letter sent by the VA attorney did not recommend dismissal of the indictment, instead it suggested avenues of investigation to make the case. When the personnel director learned of these facts he spoke personally to the United States Attorney and recommended dismissal of the charges. The United States Attorney for the Southern District of California prosecuted anyway. *United States v. Williams*, 780 F.2d 802, 803 (9th Cir.1986).

■ Like Elliott, Williams moved to dismiss the indictment because the VA had not honored the deal he made. The *Williams* court recognized that while the United States Attorney is generally not bound by a promise made by a government employee, there is an exception to the rule. When the "breach of the agreement rendered a prosecution fundamental-ly unfair," *Williams* at 803, the district court has authority to dismiss the case.

### b. The Rodman case

In a First Circuit case, *United States v. Rodman*, 519 F.2d 1058 (1st Cir.1975) relied on by the *Williams* court, the First Circuit held that a district court did not abuse its supervisory powers by dismissing an indictment because the prosecution was unfair. There the SEC promised to recommend non prosecution to the United States Attorney if Rodman cooperated in an SEC investigation. He did. They didn't. The district court and the First Circuit found dismissal appropriate.

### c. Elliott's case

■ In *Williams* the Ninth Circuit did not resolve the issue of whether the standard the district court applies is one of detrimental reliance and fundamental fairness, or whether the issue turns on the nature of the promisor. The crucial issue for the latter standard is whether the promise was made as a part of the criminal justice system of the sovereign prosecuting the case. The *Williams* court found under either standard the facts in *Williams* did not support dismissal of the case. Williams was not induced by the agreement to incriminate himself, to furnish information useful to the government in developing the case against him, or to plead guilty. Neither did he suffer any other prejudice that would render his conviction unfair.

---

will the felony conviction deter? It will deter a very bright student from becoming a doctor. It will deter an intelligent person from voting or from holding public office. It will deter a young man who made a stupid mistake from ever keeping or possessing firearms or ammunition and from ever hunting again. It will deter a smart person who made a mistaken judgment from ever being a juror or grand juror. It has a potential negative impact on

Agent Spanogle's undercover law enforcement activities because his credibility is on the line. It will insert the federal government in what is clearly a state case. Ultimately, you have to ask "Why?" The fundamental issue here is "How has the federal sovereign been offended?" This prosecution is at odds with the idea that the state of Montana is a competent sovereign to prosecute drug offenses.

Here the same analysis the *Williams* panel used would lead to dismissal of the case if the detrimental reliance and fundamental fairness test is used. That might not be the case if the criminal justice promisor test is used because Agent Spanogle is not a part of federal law enforcement, or working at the time with a federal task force.[3] Elliott was induced by the state agent to believe that there was little or no risk of federal prosecution because the amount of marijuana was too small to make it a "federal case." Elliott would not have talked to the state authorities if he thought the case was federal. Likewise, without Elliott's cooperation the state would not have been able to develop the proof or gather the evidence to make the conspiracy case against his more culpable co-defendants and to take the case "federal." Elliott gave information that incriminated him in the larger conspiracy, though arguably there was enough to make a two pound conspiracy case in federal court against Elliott and his two companions that were arrested at Garrison. The conspiracy that led to federal charges against Elliott could not have been made without his cooperation. Thus, it is likely that had he not talked, he would be facing state charges for distribution of two pounds of marijuana. Had he gotten a deferred prosecution or a deferred sentence for a first offense in state court he would be eligible for clearing his record in its entirety on successful completion of the deferred prosecution or sentence. The state constitution and statutes, on petition or automatically, would allow a full restoration of all of his rights, including the right to vote, the right to hold public office, the right to be a juror or a grand juror, and the right to hunt.[4] 1972 Montana Constitution, Article II, § 28(2); § 44–18–204, MCA (Dismissal after deferred imposition).

Elliott will suffer other prejudice that, given the referral rules in place when he began cooperating[5] give credence to his claim that the prosecution is unfair. With a felony drug conviction, he is likely to lose any chance of ever entering medical school. He will be disqualified from many professions because of his lack of judgment resulting in a federal felony conviction. Given his age and culpability, he will pay a pretty price for his bad judgment.

Applying the fundamental fairness and detrimental reliance test, this federal prosecution makes no sense. It is facially unjust if what we are doing is seeking a fair and just resolution concerning *federal* criminal conduct. Depriving a bright young person of his future because of a federal conviction that is likely to get him probation is the harsh exercise of prosecu-

---

3. Informal agreements between the government and cooperating witnesses are governed by principles of contract law. *United States v. Chiu,* 109 F.3d 624, 625 (9th Cir.1997). In general, the United States Attorney is the only federal official with the power to bind the government to an informal agreement with a witness. *United States v. Williams,* 780 F.2d 802, 803 (9th Cir.1986) (citing *United States v. Irwin,* 612 F.2d 1182, 1191 n. 20 (9th Cir. 1980)).

4. Whether a person has his right to keep or possess firearms under federal law if he has his rights fully restored under the Montana Constitution is unresolved in Montana.

5. The only evidence in the record about the federal referral rules is the testimony of Agent Spanogle. His testimony is believable because one would think the federal prosecutor has bigger fish to fry than a two pound marijuana case. In other words, common sense tells us that this is not a "federal case," it is a state case. When deciding whether to initiate or to continue a prosecution "it is the duty of the United States Attorney not to simply prosecute, but to do justice." See *U.S. v. Weber,* 721 F.2d 266, 268 (9th Cir.1983).

torial power and it seems to me to be at odds with the prosecutor's duty to seek justice, not to seek convictions.[6] Prosecuting this case *in federal court as opposed to the Montana state courts*, raises the specter of judgment caused by the bad judgment that led to the wrongdoing in the first place. At some point the federal sovereign needs to defer to the state's interest in prosecuting minor drug offenses. Federalism is still important and should not be measured by the yardstick of severe sentences, especially when that concern has no application to the case at hand.

Nonetheless, I am troubled by the idea that a court should exercise the power, except in the most egregious circumstances, to tell the prosecutor what cases to bring.[7] There is a statute that makes distributing two pounds of marijuana a federal crime. *See* 21 U.S.C. § 812(c)(c)(10); 21 U.S.C. § 841(a)(1), (b)(1)(D). There is a statute that makes it a crime for two or more people to conspire to distribute two pounds of marijuana. *See* 21 U.S.C. § 846. So, if I impose my normative view on what cases *should* be prosecuted in federal court, I would dismiss this case and let the state prosecute it. But, such a holding would create a structural problem to say the least.

## Conclusion

Therefore, IT IS ORDERED that Elliott's motion to dismiss is denied. [docket # 33]

This case started with the bad judgment of a very bright college student who wants to be a doctor. His bad judgment continued when he believed an honest state agent who told him he would not likely be prosecuted in federal court because the amount of marijuana he had was too small for referral to make it a "federal case." The wraith of that judgment seems apparent when the case was taken to a federal grand jury against Elliott. The role of the court is to see that Elliott gets a fair trial and if he is found guilty, to fashion an appropriate sentence. Good judgment here would mean deference to the state or a deferred federal prosecution. But if there is an injustice it does not rise to the level of the "inherently unfair" standard for dismissal.

IT IS FURTHER ORDERED this case is set for trial on **March 28, 2005.** The plea deadline is set for **March 17, 2005.**

6. The principal case describing a prosecutor's duty is *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). While *Berger* involved issues of prosecutorial misadventure, not an issue here by any means, it does articulate clearly the demanding responsibility of the office of the United States Attorney. Unlike most lawyers, the United States Attorney is not only bound to be a zealous advocate, but he or she is also supposed to exercise judgment about when conduct warrants federal prosecution. That judgment cannot be thoroughly exercised through adherence to a fixed set of preordained rules. Just because the *power to prosecute* exists does not mean that power must be exercised.

    The United States Attorney is the representative not of an ordinary party to a contro-

versy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. *Berger v. United States*, supra, at 88, 55 S.Ct. 629.

7. If federal judges in Montana could exercise such power or that choice, many of the cases charged in our federal court the past few years would properly be left to the state for prosecution. Not every crime is a "federal case." The doctrine of dual sovereignty is not a license to usurp the state criminal justice system. This is particularly so when the likely sentence in federal court is probation.

The Clerk of Court is directed to notify the parties of the entry of this Order.