**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Harold A. THOREEN,**
**Defendant-Appellant.**

**No. 80–3137.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 5, 1981.

Decided Aug. 17, 1981.

John J. Canary, Fredric Tausend, Seattle, Wash., for defendant-appellant.

Jose E. Gaitan, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.

Before WRIGHT and NORRIS, Circuit Judges, and HATFIELD, District Judge.*

EUGENE A. WRIGHT, Circuit Judge:

## I. INTRODUCTION

The issue before us is whether an attorney may be found in criminal contempt for pursuing a course of aggressive advocacy while representing his client in a criminal proceeding such that, without the court's permission or knowledge, he substitutes someone for his client at counsel table with the intent to cause a misidentification, resulting in the misleading of the court, counsel, and witnesses; a delay while the government reopened its case to identify the defendant; and violation of a court order and custom.

We affirm the district court's finding of criminal contempt. The conclusion that this appeal was untimely is reversed.

## II. FACTS

By February 1980, Thoreen, an attorney, had practiced law for almost five years.

He was a member of the bars of the State of Washington and of the Western District of Washington. He had made numerous court appearances and participated in one trial and several pretrial appearances before Judge Jack E. Tanner of the Western District of Washington.

In February 1980, he represented Sibbett, a commercial fisher, during Sibbett's non-jury trial before Judge Tanner for criminal contempt for three violations of a preliminary injunction against salmon fishing.[1] In preparing for trial, Thoreen hoped that the government agent who had cited Sibbett could not identify him. He decided to test the witness's identification.

He placed next to him at counsel table Clark Mason, who resembled Sibbett and had Mason dressed in outdoor clothing—denims, heavy shoes, a plaid shirt, and a jacket-vest.

Sibbett wore a business suit, large round glasses, and sat behind the rail in a row normally reserved for the press.

Thoreen neither asked the court's permission for, nor notified it or government counsel of, the substitution.

On Thoreen's motion at the start of the trial, the court ordered all witnesses excluded from the courtroom. Mason remained at counsel table.

Throughout the trial, Thoreen made and allowed to go uncorrected numerous misrepresentations. He gestured to Mason as though he was his client and gave Mason a yellow legal pad on which to take notes. The two conferred. Thoreen did not correct the court when it expressly referred to Mason as the defendant and caused the record to show identification of Mason as Sibbett.

Because of the conduct, two government witnesses misidentified Mason as Sibbett. Following the government's case, Thoreen called Mason as a witness and disclosed the

---

* Of the District of Montana.

**1.** Mr. Sibbett was one of over 240 fishers prosecuted for violating the injunction. This court affirmed his convictions in *U.S. v. Baker*, 641 F.2d 1311 (9th Cir.1981).

substitution. The court then called a recess.

When the trial resumed, the government reopened and recalled the government agent who had cited Sibbett for two of the violations. He identified Sibbett, who was convicted of all three violations.

On February 20, 1980, Thoreen was ordered to appear on February 27 and show cause why he should not be held in criminal contempt. At the hearing, Judge Tanner found him in criminal contempt.

The order was lodged with the court on March 28. The signed order was filed and entered on the civil docket on March 31. In a letter of April 2, the court clerk said he mailed a copy to Thoreen and to his attorney. Thoreen's copy went to an incorrect address. The order of August 12, however, finds that the clerk did not send a copy to Thoreen's attorney until April 7.

Eleven days later, on April 11, Thoreen filed a notice of appeal.

On July 9, this court entered an order remanding to the district court to rule whether that court's order was entered properly and, if not, whether Thoreen's de-lay in filing was due to excusable neglect. The district court found (1) the order was entered properly, (2) the clerk mailed a copy to Thoreen's attorney on April 7, (3) Thoreen filed his notice of appeal one day after the ten-day limit for filing criminal appeals expired, and (4) his delay was not due to excusable neglect because he had notice of the court's ruling from the show cause hearing on February 27.

The action has been docketed consistently as a civil matter as was the underlying contempt action against Sibbett.

## III. DISCUSSION

### A. JURISDICTION

Federal Rule of Appellate Procedure 4(a) provides that appeals as of right from civil cases shall be filed within 30 days from entry of judgment. Federal Rules of Appellate Procedure 4(b) says that a criminal appeal must be filed within ten days after entry.[2] A judgment "is entered within the meaning of [4(b)] when it is entered in the criminal docket." Id.

Thoreen argues that he filed timely because the case was docketed consistently as

**2.** FRAP 4.

Rule 4. Appeal as of Right—When Taken
  (a) Appeals in Civil Cases.
  (1) In a civil case in which an appeal is permitted by law as of right from a district court to a court of appeals the notice of appeal required by Rule 3 shall be filed with the clerk of the district court within 30 days after the date of entry of the judgment or order appealed from; but if the United States or an officer or agency thereof is a party, the notice of appeal may be filed by any party within 60 days after such entry. If a notice of appeal is mistakenly filed in the court of appeals, the clerk of the court of appeals shall note thereon the date on which it was received and transmit it to the clerk of the district court and it shall be deemed filed in the district court on the date so noted.
  (b) Appeals in Criminal Cases. In a criminal case the notice of appeal by a defendant shall be filed in the district court within 10 days after the entry of the judgment or order appealed from. A notice of appeal filed after the announcement of a decision, sentence or order but before entry of the judgment or order shall be treated as filed after such entry and on the day thereof. If a timely motion in arrest of judgment or for a new trial on any ground other than newly discovered evidence has been made, an appeal from a judgment of conviction may be taken within 10 days after the entry of an order denying the motion. A motion for a new trial based on the ground of newly discovered evidence will similarly extend the time for appeal from a judgment of conviction if the motion is made before or within 10 days after entry of the judgment. When an appeal by the government is authorized by statute, the notice of appeal shall be filed in the district court within 30 days after the entry of the judgment or order appealed from. A judgment or order is entered within the meaning of this subdivision when it is entered in the criminal docket. Upon a showing of excusable neglect the district court may, before or after the time has expired, with or without motion and notice, extend the time for filing a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise prescribed by this subdivision.

a civil matter and the order has never been entered on a criminal docket. The government argues the court lacks jurisdiction because the contempt proceeding was criminal and Thoreen failed to file within the ten-day period.

██ We agree with the government that the contempt proceeding was criminal, but hold that Thoreen's appeal was timely because the clerk did not enter the judgment on the criminal docket. The ten-day period had not begun to run. *See United States v. Ronne*, 414 F.2d 1340, 1342 n.1 (9th Cir.1969). A notice of appeal filed after the court's announcement of its order, but before its entry is timely because it is "treated as filed after such entry and on the day thereof." 9 Wright's Federal Practice, ¶ 204.20 at 4–133 (1980).

Alternatively, the appeal is timely under Rule 4(a) because it was filed within 30 days of the entry of the judgment on the civil docket.[3]

### B. *CONTEMPT*

Judge Tanner found Thoreen in criminal contempt for the substitution because it was imposed on the court and counsel without permission or prior knowledge; the claimed identification issue did not exist; it disrupted the trial; it deceived the court and frustrated its responsibility to administer justice; and it violated a court custom. He found Mason's presence in the courtroom after giving the order excluding witnesses another ground for contempt because Thoreen planned that Mason would testify when the misidentification occurred. Judge Tanner held also that Thoreen's conduct conflicted with DR 1–102(A)(4)[4], DR 7–102(A)(6)[5], and DR 7–106(C)(5)[6] of the Washington Code of Professional Responsibility.

Thoreen's principal defense is that his conduct was a good faith tactic in aid of cross-examination and falls within the protected realm of zealous advocacy. He argues that as defense counsel he has no obligation to ascertain or present the truth and may seek to confuse witnesses with misleading questions, gestures, or appearances. *See United States v. Wade*, 388 U.S. 218, 257–58, 87 S.Ct. 1926, 1947–48, 18 L.Ed.2d 1149 (1967) (Justice White, dissenting and concurring in part).

He argues also that (1) in the absence of a court rule controlling who may sit at counsel table, his failure to give notice of the substitution is not misbehavior within 18 U.S.C. § 401(1) (1976); (2) he did not intend to deceive; and (3) the exclusion order was not directed at Mason.

#### 1. *Zealous Advocacy*

██ While we agree that defense counsel should represent his client vigorously, regardless of counsel's view of guilt or innocence, *Wade, supra*; Washington Code of Professional Responsibility (CPR), Canon 7, we conclude that Thoreen's conduct falls outside this protected behavior.

██ Vigorous advocacy by defense counsel may properly entail impeaching or

---

**3.** Because we find the appeal timely, we do not reach the excusable neglect issue.

**4.** DR 1–102(A)(4)
  DR 1–102 Misconduct.
    (A) A lawyer shall not:
    (4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.

**5.** DR 7–102(A)(6)
  DR 7–102 Representing a Client Within the Bounds of the Law.
    (A) In his representation of a client, a lawyer shall not:

(6) Participate in the creation or preservation of evidence when he knows or it is obvious that the evidence is false.

**6.** DR 7–106(C)(5)
  DR 7–106 Trial Conduct
    (C) In appearing in his professional capacity before a tribunal, a lawyer shall not:
    (5) Fail to comply with known local customs of courtesy or practice of the bar or a particular tribunal without giving to opposing counsel timely notice of his intent not to comply.

confusing a witness, even if counsel thinks the witness is truthful, and refraining from presenting evidence even if he knows the truth. *Wade, supra.* When we review this conduct and find that the line between vigorous advocacy and actual obstruction is close, our doubts should be resolved in favor of the former. *Commonwealth of Pennsylvania v. Local 542 International Union of Operating Engineers,* 552 F.2d 498, 509 (3rd Cir.), *cert. denied sub nom., Freedman v. Higginbotham,* 434 U.S. 822, 98 S.Ct. 67, 54 L.Ed.2d 79 (1977).

■ The latitude allowed an attorney is not unlimited. He must represent his client within the bounds of the law. *Wade, supra;* CPR Canon 7. As an officer of the court, he must "preserve and promote the efficient operation of our system of justice." *Chapman v. Pacific Tel. & Tel.,* 613 F.2d 193, 197 (9th Cir.1979).

■ Thoreen's view of appropriate cross-examination, which encompasses his substitution, crossed over the line from zealous advocacy to actual obstruction because, as we discuss later, it impeded the court's search for truth, resulted in delays, and violated a court custom and rule. Moreover, this conduct harms rather than enhances an attorney's effectiveness as an advocate.

> It is fundamental that in relations with the court, defense counsel must be scrupulously candid and truthful in representations of any matter before the court. This is not only a basic ethical requirement, but it is essential if the lawyer is to be effective in the role of advocate, for if the lawyer's reputation for veracity is suspect, he or she will lack the confidence of the court when it is needed most to serve the client.

*American Bar Association Standards for Criminal Justice, The Defense Function* 4.9 (1980) (footnote omitted) (herein *The Defense Function*).

2. *Criminal Contempt*

18 U.S.C. § 401 (1976) provides

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

(1) *Misbehavior* of any person *in its presence* or so near thereto as to *obstruct the administration of justice;*

(3) *Disobedience* or resistance *to its* lawful writ, process, *order,* rule, decree, or command.

(emphasis added).

■ Contumacious misbehavior punishable under section 401(1) must be willful, *In re Gustafson,* 650 F.2d 1017 at 1019–1021 (9th Cir., 1981) (en banc), and must " 'actually obstruct' " the district judge in the performance of his judicial duties. *Id.* .

■ One may be found in contempt for disobeying an order pursuant to section 401(3) "only if the order is clear and definite, and the contemnor has knowledge of it." *United States v. Baker,* 641 F.2d 1311, 1315 (9th Cir.1981).

a. *Contumacious Misbehavior and Obstruction of Justice*

Because Thoreen's conduct was in the court's presence, our inquiry turns to whether it constituted contumacious misbehavior that obstructed the administration of justice.

Misbehavior punishable under section 401(1) has been defined as "conduct inappropriate to the particular role of the actor, be he judge, juror, party, witness, counsel or spectator." *United States v. Seale,* 461 F.2d 345, 366 (7th Cir.1972). *See also, Gordon v. United States,* 592 F.2d 1215, 1218 (1st Cir.), *cert. denied,* 441 U.S. 912, 99 S.Ct. 2011, 60 L.Ed.2d 384 (1979). Requiring adherence to these roles ensures "that a judicial proceeding [will be] confined to a rational search for truth in the context of defined legal issues." *Seale, supra,* 461 F.2d at 366–67.

■ Contumacious misbehavior by an attorney includes disobeying a court's

rulings or instructions, *Gustafson, supra,* and deceiving the court. Examples of contumacious deceptive behavior are misrepresenting oneself as a practicing attorney, *Bowles v. United States,* 50 F.2d 848, 851 (4th Cir.), *cert. denied* 284 U.S. 648, 52 S.Ct. 29, 76 L.Ed. 550 (1931); an attorney's swearing to and filing of admittedly false affidavits and supplemental complaint, plus the pursuit of meritless litigation, *Letts v. Icarian Development Co., S.A.,* No. 74 C 2252 (N.D.Ill., September 15, 1980); and an attorney's presentation of false evidence, *United States v. Ford,* 9 F.2d 990, 991 (D.Mont.1925).

■ Making misrepresentations to the court is also inappropriate and unprofessional behavior under ethical standards that guide attorneys' conduct. These guidelines, in effect in Washington and elsewhere, decree explicitly that an attorney's participation in the presentation or preservation of false evidence is unprofessional and subjects him to discipline. *See* CPR DR 7–102(A)(4), (5), (6); EC 7–6, 7–26; *The Defense Function* 4.93.

■ Substituting a person for the defendant in a criminal case without a court's knowledge has been noted as an example of unethical behavior by the ABA Committee on Professional Ethics. *See* Informal Opinion No. 914, 2/24/66 (decided under the former ABA Code of Professional Responsibility).

■ Ethical standards establish the outermost limits of appropriate and sanctioned attorney conduct. While we acknowledge that a court's power to discipline or disbar an attorney " 'proceeds upon very different grounds' from those which support a court's power to punish for contempt," *Cammer v. United States,* 350 U.S. 399, 408 n.7, 76 S.Ct. 456, 460 n.7, 100 L.Ed. 474 (1956) (quoting *Ex Parte Robinson,* 86 U.S. 505, 19 Wall. 505, 512, 22 L.Ed. 205), we consider and apply ethical benchmarks when determining whether an attorney's

conduct is inappropriate to his role and thus constitutes contumacious misbehavior.

■ Counsel's conduct must cause an actual obstruction of justice before criminal contempt lies. *In re Michael,* 326 U.S. 224, 228, 66 S.Ct. 78, 80, 90 L.Ed. 30 (1945); *Gustafson, supra.* The standard is whether the obstruction or disruption is material. *In re Kirk,* 641 F.2d 684, 687 (9th Cir.1981); *Seale, supra,* 461 F.2d at 369.

■ The seriousness of the misbehavior has some bearing on whether the conduct is materially obstructive. *Seale, supra.* Mere disrespect, insult, or an affront to a court's sense of dignity are insufficient. *Brown v. United States,* 356 U.S. 148, 153, 78 S.Ct. 622, 625, 2 L.Ed.2d 589 (1958); *Gordon, supra,* 592 F.2d at 1217; *United States v. Trudell,* 563 F.2d 889, 892 (8th Cir.1977); *Seale, supra.*

■ There is a point where "mere words are so offensive and so unnecessary that their very utterance creates a delay which is an obstruction of justice." *Gordon, supra. See Seale, supra,* 461 F.2d at 370. A pro se litigant's vituperative outburst, for example, constitutes an obstruction because it causes a delay in the time involved in the litigant's delivery of his outburst and in the time necessary to get the court proceedings back on track. *Gordon, supra.*

■ Conduct lacking vituperation, violence, or physical force may be found obstructive. *In re Chaplain,* 621 F.2d 1272, 1277 (4th Cir.), *cert. denied,* 449 U.S. 834 101 S.Ct. 106, 66 L.Ed.2d 40 (1980); *Commonwealth of Pennsylvania, supra.* Flouting a court's commands in a polite, respectful, and subdued manner has been found to be "the essence of obstructing the administration of justice." *Id. See also, United States v. Abascal,* 509 F.2d 752, 754 (9th Cir.), *cert. denied,* 422 U.S. 1027, 95 S.Ct. 2621, 45 L.Ed.2d 684 (1975).

■ Making misrepresentations to the fact finder is inherently obstructive because

it frustrates the rational search for truth. It may also delay the proceedings. In *In re Dellinger*, 502 F.2d 813, 816 (7th Cir.1974), *cert. denied*, 420 U.S. 990, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975), for example, the Seventh Circuit held that an attorney obstructed justice by putting inadmissible evidence before the jury, hampering its ability to decide the case according to the legal principles provided them. A witness's sham denial of knowledge similarly obstructs justice by closing off avenues of inquiry and stifling a jury's ability to ascertain the truth. *United States v. Griffin*, 589 F.2d 200, 205 (5th Cir.), *cert. denied*, 444 U.S. 825, 100 S.Ct. 48, 62 L.Ed.2d 32 (1979).

■ The record supports Judge Tanner's conclusion that Thoreen's substitution was misbehavior that obstructed justice. It was inappropriate because it was done without consent, and violated a court custom to allow only counsel, parties, and others having the court's permission to sit forward of the rail. This conduct is deemed unprofessional and may subject an attorney to disciplinary measures in Washington. CPR DR 7–106(C)(5).

■ Thoreen's argument that he may not be held in contempt for violating the custom and practice because he lacked notice of it is unpersuasive. Generally, "an absence of any warning that borderline conduct is regarded as contumacious could be fatal to a contempt citation." *Seale, supra*, 461 F.2d at 366. *See also, Baker, supra*, 641 F.2d at 1315. Nevertheless, a contemnor need not have specific warning or be aware that his acts may subject him to criminal sanctions as opposed to other penalties. *Seale, supra*. Certain conduct is inherently inappropriate and self-noticing. *Gordon, supra*, 592 F.2d at 1218 n.3.

In federal and state courts of general jurisdiction, only attorneys and parties customarily sit at counsel table. Others do so only with the court's permission.

Thoreen's years in practice included trial and pretrial experience in Judge Tanner's court and presumably in other courts. Viewing the evidence in the light most favorable to the government, we cannot accept Thoreen's contention that he was unaware of this widespread custom.

■ His violation of the order to exclude witnesses by keeping Mason at counsel table is both a second example of misbehavior and independent grounds for contempt under § 401(3). He argues, however, that he did not violate the order because it was not directed at Mason because (1) Mason would not change his testimony after hearing other testimony and (2) it was unclear that Mason would be a witness.

This argument belies the facts. The order, made at Thoreen's request, did not distinguish between witnesses who might alter their testimony and those who might not. He acknowledges that he intended from the outset to call Mason as a witness after the anticipated misidentification occurred. By failing to have Mason leave, he made an unfortunate error in judgment. *See, e. g., United States v. Baer*, 575 F.2d 1295, 1301 (10th Cir.1978) (an attorney's attempt to disprove that he was the person charged with two traffic violations (1) when he knew he was the person charged and (2) by relying on the failure to place "Jr." following his name, is inexcusable, tragic gamesmanship); *In re Serra*, 484 F.2d 947, 948 (9th Cir.1973) (contemptuous for an attorney to frustrate a court discovery order to produce medical reports by instructing the medical witness to make no written reports).

■ Thoreen's argument that the substitution did not obstruct justice because he corrected it before the court ruled on it, *see, e. g., United States v. Turk*, 10 F.Supp. 957, 959 (E.D.N.Y.1934) (a correction of perjurious testimony before the court issued its decision purged contempt), ignores the evidence of obstruction and disruption that occurred despite his revelation. The deception delayed proceedings in the time taken for witnesses' misidentification of the de-

fendant and the time required to recall one witness to identify Sibbett correctly. Of greater importance is that it impeded the court's ability to ascertain the truth.

■ Nor is reliance on a misrepresentation necessary to a finding that deceptive or misleading conduct obstructed justice. Delay or hindering the court's ability to ascertain the truth is sufficient.

b. *Intent*

■ To be held in criminal contempt, the contemnor must have the requisite intent.

"[A]n attorney possesses the requisite intent only if he knows or reasonably should be aware in view of all the circumstances, especially the heat of the controversy, that he is exceeding the outermost limits of his proper role and hindering rather than facilitating the search for truth." (citation omitted).

*In re Kirk, supra,* 641 F.2d at 687.

■ Proof of an evil motive or of an actual intent to obstruct justice is unnecessary. *Commonwealth of Pennsylvania, supra,* 552 F.2d at 510; *Seale, supra,* 461 F.2d at 398. Intent must be proved beyond a reasonable doubt. *Baker, supra,* 641 F.2d at 1317; *In re Kirk, supra.*

■ Intent may be inferred from facts and circumstances. *Baker, supra.* An attorney's intent may be inferred if his "conduct discloses a reckless disregard for his professional duty." *In re Farquhar,* 492 F.2d 561, 564 (D.C.Cir.1973) (citation omitted).

■ Good faith is a defense to a finding of intent, *Baker supra,* but it does not immunize all conduct undertaken by an attorney on behalf of a client. *Seale, supra.* It

requires only that a court allow an attorney great latitude in his pursuit of vigorous advocacy. *Id.*

Thoreen admits he planned and intended the substitution, but defends by asserting that (1) it was a good faith effort to prove misidentification and attack the credibility of the government witnesses; (2) he never intended to misrepresent any facts to the court or to obstruct justice; and (3) he believed the court knew Sibbett's identity from the pretrial hearing.

The record shows that Sibbett's identification was not an issue, contradicting the need to attack credibility. The testimony about Sibbett's violations was thorough, credible, and not in conflict.

Thoreen's alleged belief that the court would remember Sibbett from a pretrial proceeding is unrealistic because that hearing took place several months earlier and Sibbett was but one of many persons cited for violating the salmon fishing injunction.

■ His alleged lack of intent to deceive the court or to obstruct justice is irrelevant. Section 401(1) does not require specific intent. It suffices that he should have been aware that his conduct exceeded reasonable limits and hindered the search for truth.

*CONCLUSION*

■ Thoreen's error in judgment was unfortunate. The court's ire and this criminal contempt conviction could have been avoided easily and the admirable goal of representing his client zealously preserved if only he had given the court and opposing counsel prior notice and sought the court's consent.[7]

Nonetheless, viewing the evidence in the light most favorable to the government, we

---

**7.** While finding Thoreen's tactic misleading and obstructive of justice, we acknowledge that certain variations are acceptable. If identification is at issue, an attorney could test a witness's credibility by notifying the court and counsel that it is and by seeking the court's permission to (1) seat two or more persons at counsel table without identifying the defendant; *see Duke v. State,* 260 Ind. 638, 298 N.E.2d 453 (1973); (2) have no one at counsel table; (3) hold an in-court lineup.

find that there is sufficient evidence to find beyond a reasonable doubt that Thoreen violated 18 U.S.C. § 401(1) and (3). *Baker, supra.* The district court's findings were not clearly erroneous. *Id.* We AFFIRM the contempt conviction. We REVERSE the finding that this appeal was untimely.