**Ali S. AHMED, Plaintiff,**

v.

**REISS STEAMSHIP CO., Defendant.**

**Civ. A. No. C 80–506.**

United States District Court,
N.D. Ohio, E.D.

Feb. 23, 1984.

Leonard C. Jaques, Detroit, Mich., for plaintiff.

Robert Dunn, Detroit, Mich., for defendant.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

Attorney Leonard Jaques' failure to appear for trial before this Court on October 26, 1983, and the misrepresentations sur-

rounding his failure to appear, compel the imposition of sanctions in this case.

On October 26, 1983, attorney Leonard Jaques failed to appear before this Court for trial as scheduled. An associate of his represented that Jaques was in Baltimore, Maryland appearing before the Honorable Joseph C. Howard. When this Court attempted to contact Jaques by phone, Judge Howard advised this Court that Jaques was not appearing in Judge Howard's courtroom, but had been released the previous day to allow him to appear in Cleveland. In essence, Jaques told two different federal district court judges that he was appearing before the other, when in fact Jaques was appearing before neither. After notice and a hearing, this Court finds that Leonard Jaques has failed to show cause why sanctions should not be imposed for violations of 18 U.S.C. § 401(1) and § 401(3).

## FACTS

Jaques represented the plaintiff, Ali S. Ahmed, in a civil admiralty proceeding before this Court. At Jaques' request, advance scheduling arrangements were made to insure Jaques and his client a firm trial date. Guaranteeing a firm date in civil trials is a substantial departure from this Court's customary practice. The press of criminal trials which must be expedited due to the Speedy Trial Act compels this Court to typically schedule civil cases only as back-up trials to criminal cases. Such was this Court's calendar in the fall of 1983.

As a courtesy to Jaques and his client, this Court departed from its standard scheduling procedure and on April 13, 1983 advised Jaques of a trial date of October 4, 1983; on August 1, 1983, this Court set a

firm trial date of October 24, 1983. This accommodation was made because Jaques informed this Court that his client would be travelling from Yemen to attend the trial. Jaques further advised that a number of witnesses were seamen on various vessels who would have to be brought in from their ships in order to testify. The Court was persuaded that Jaques' case presented unusual circumstances which warranted exceptional scheduling arrangements and the October 24, 1983 trial date was guaranteed.[1] On the designated date, and at repeatedly rescheduled times thereafter, the Court and twenty-two veniremen stood ready and waiting to proceed while Jaques and his associates delayed the Court and its trial calendar.

On Wednesday, October 19, Jaques' office informed this Court that a trial in which Jaques was appearing before the Honorable Joseph C. Howard in Baltimore[2] would exceed its projected five day duration and would not be completed until Monday, October 24, 1983. Consequently, at Jaques' request, this Court continued Ahmed's trial until Wednesday, October 26, 1983, and scheduled the pretrial for October 25, 1983 at 4:00 p.m.

On Monday, October 24, 1983, Judge Howard's law clerk called this Court to advise that their trial would not be completed that day, but would be submitted to the jury on Tuesday, October 25. This Court then left word with Judge Howard's chambers and with Jaques' Detroit office that Jaques would be expected for a pretrial conference followed immediately by trial, beginning Wednesday, October 26 at 9:30 a.m. No response to the contrary was received until Tuesday evening at 6:00 p.m.[3] when Jaques' associate, Gary Baun,

---

**1.** Ahmed's case, filed in April of 1980, was three years old at the time these dates were set. After the lapse of so much preparation time, this Court believed that Jaques was sincere in representing the posture of his witness list. Shortly before the trial date, however, Jaques submitted proposed voir dire questions on behalf of his client, and the Court learned from them that, although Ahmed is a native of Yemen, he immigrated to this country in the mid 60's, is a naturalized citizen, and now lives in Detroit. In

addition, the Court learned that Jaques did not intend to call any seamen, other than Ahmed, as witnesses at trial.

**2.** *Estate of Walter Larkins v. Farrell Lines, Inc.,* No. JH82–2645 went to trial on October 17, 1983. It had been scheduled for that date since mid-July.

**3.** At this hour, it was too late for the Court to advise the veniremen not to attend the next day,

called and said that Jaques could not be in Cleveland for trial on Wednesday because his presence was necessary when the jury instructions were delivered in Judge Howard's courtroom on Wednesday morning. This Court's suggestion that Jaques' associate stay for the jury instructions and Jaques appear in Cleveland on Wednesday was rejected.

At the Court's request, Baun arranged to send Robert Swickle on Jaques' behalf with Ali Ahmed to Cleveland to meet with the Court and defense counsel[4] for a pretrial conference and settlement negotiations. Baun explicitly represented that Swickle would have full authority to settle the case. Settlement discussions stalemated Wednesday afternoon when Swickle told the Court that no further progress could be made until Ahmed spoke to Jaques. It became clear that, despite Baun's representation that Swickle had authority to settle, he really had no power to allow the case to be settled unless Ahmed spoke with Jaques.

Hoping to resolve the stalemate, this Court called Judge Howard in an attempt to reach Jaques. He was not appearing before Judge Howard, nor had he made an appearance at all that day. Judge Howard said he had excused Jaques at 4:00 p.m. the previous evening so Jaques could appear before this Court on Wednesday morning. Jaques' associates were present while Judge Howard delivered the jury instructions Wednesday morning, but Jaques never made an appearance. Judge Howard believed Jaques was in Cleveland and this Court believed Jaques was in Baltimore. Apparently, he was neither. Settlement discussion could not proceed and negotiations were stymied because of Jaques' unavailability. The Court instructed Swickle to locate Jaques and advise the Court by 4:45 p.m. whether it would be necessary to recall the jury for Thursday.

as is the Court's custom when a scheduled trial is cancelled or postponed.

4. Defendant's attorney, Robert Dunn flew to Cleveland from Detroit on Tuesday evening in anticipation of trial on Wednesday morning.

On Thursday, Jaques again failed to appear before the Court in Cleveland, instead calling from Detroit at 4:15 p.m. to advise that his client, Ahmed, rejected defendant's offer of $100,000.00. Jaques was instructed to appear for trial at 9:00 a.m. Friday, October 28, 1983.

Following his tardy arrival on Friday, Jaques informed the Court that he was scheduled to appear before the Fifth Circuit Court of Appeals for oral argument on Monday, October 31, 1983. At his request, the Court agreed that, at the end of the day, it would not reconvene the trial until Tuesday afternoon. The jury was empaneled and, during the recess prior to opening statements, Jaques presented Reiss Steamship with an offer to settle the case for a cash award of $125,000.00. The parties knew, from events of the previous two days, that the five hour time difference between Cleveland and defendant's London office prevented Reiss Steamship's attorney from immediately determining if the counteroffer was acceptable. Consequently, the trial was adjourned for the weekend. The parties advised the Court by phone on Monday, October 31, 1983, that they had settled their dispute for $125,000.00. Leonard Jaques avoided any further appearance before this Court.

Having advised Swickle, on the record, on October 26 that he and Jaques and Baun would be called upon at the conclusion of the case to explain their absence on Wednesday and the discrepancy between their version of their courtroom responsibilities and Judge Howard's version, this Court issued notice on November 2, 1983 to Leonard Jaques, Gary Baun and Robert Swickle ordering them to appear for a hearing on December 23, 1983. A transcript reciting the essential facts which would be the focus of inquiry at the hearing was docketed November 15, 1983 and issued to Jaques.

Before leaving Detroit, he checked with the Court periodically to be sure Jaques had not asked for another continuance. He last checked with the Court by phone from the airport at 4:05 p.m. before boarding a plane.

At the hearing on December 23, 1983, Jaques suggested that this Court had not specifically advised him of the reason for the hearing and the focus of its inquiry. This Court finds that Jaques was advised. In a hearing in chambers on October 26, 1983, the day Jaques failed to appear, Jaques' associate, Robert Swickle, represented to the Court that Jaques was in trial in Baltimore. (Transcript of October 26, 1983, ("T.I.") p. 2). This Court then advised Swickle that the trial judge in Baltimore had personally informed this Court to the contrary; and this Court intended to pursue the question of Jaques' nonappearance at the conclusion of the case.

During the lunch break Judge Howard, who is presiding at the trial in Baltimore, advised me that he had made special arrangements yesterday afternoon for Mr. Jaques to leave Baltimore shortly after 4:00 o'clock because Mr. Jaques had represented to Judge Howard that he had to be in Cleveland this morning, and Mr. Jaques has not in fact been at the trial in Baltimore during any part of today's proceedings.

It is 3:30 in the afternoon and Mr. Jaques himself has put in no appearance with this Court nor has he advised this Court as to any reason why he is not here.

I want to point out to you, Mr. Swickle, that this Court takes this matter very seriously. There is a question of 22 jurors who have been here at $30 a day. We are wasting taxpayers' money, we are wasting the time of the jury, the time of this Court and I think Mr. Dunn's time and money.

I am making no judgments about what the facts as I understand them lead me to at this point. I am making no finding. I am suggesting that Mr. Jaques better have a very solid excuse as to why he is representing to two Federal Judges in two cities that he is with one or the other of them when, in fact, he is at neither place, and I do intend to pursue this after we have concluded this case. I would appreciate it if you would advise your partner of that fact.

T.I. pp. 5–6. Moreover, this Court's notice of November 2, 1983 specifically stated that the hearing would inquire into "apparent mis-behaviour related to a failure to appear before this Court as scheduled on Wednesday, October 26, 1983."

At the hearing on December 23, 1983, Jaques declined to dispute the charge that he was not in trial in Baltimore on October 26, 1983 as he led this Court to believe; and that he was not in trial in Cleveland as he led Judge Howard to believe:

MR. JAQUES: I am not answering. I am not saying anything was represented to Judge Howard. You are not cognizant and that is not before this particular body here. I make no representation. I don't believe you will ever see Mr. Jaques make any representation to this Court at all.

THE COURT: Well, I would like to know.

MR. JAQUES: You would like to know? I would like to know a lot of things about this.

THE COURT: Mr. Jaques, I simply would like to know why the representation was made to this Court that you could not be here as scheduled because you were appearing in Baltimore when I was then advised by Judge Howard that you were not in fact in Baltimore. He indicated to me that you had represented to him in Baltimore that you were in Cleveland.

MR. JAQUES: It is all very clear that I am not going to make it clear unless I get some understanding with regard to what authority—

Transcript of December 23, 1983 (T.II) p. 11.

Rather than explain his absence, Jaques tacked in another direction and attempted to allege that he was not required to appear because he was not trial counsel in the case.

THE COURT: You do not believe that if you have indicated that you are trial counsel and the trial date is set, that you have any obligation to appear?

MR. JAQUES: Judge, I was not the trial counsel here.

*Id.* at 17.

Jaques' testimony was in direct contradiction to his pretrial brief submitted January 7, 1983 which unequivocally states that trial counsel would be Leonard C. Jaques, of the Jaques Admiralty Law Firm, P.C. (See, Exhibit A). No other attorney was named as trial counsel in the brief, or in any amended pretrial brief submitted thereafter. Although Jaques may have said, on December 23, 1983, that he was not trial counsel with an obligation to appear on October 26, 1983, this Court's records indicate otherwise. The representations of Jaques' associates, who protested during the period immediately preceding October 26, 1983 that the trial could not proceed in Jaques' absence, also indicate to the contrary.

MR. SWICKLE: Basically, a face-to-face meeting, because Mr. Jaques was handling the case and I was pressed in for this, and I thought client relationships could be better maintained by Mr. Jaques and the client, which we discussed was possible, before I talked with the client at the lunch break.

T.I p. 4.

Although on October 26, 1983 Swickle represented, on the record, that he could not proceed further in settlement negotiations without Jaques, on December 23, Swickle claimed he was prepared to try the case on that date. This representation was never made to the Court on October 26 despite the Court's persistent interest in commencing the trial. Swickle's representation at the December 23 hearing is also inconsistent with his inability to reject the defendant's settlement offer on October 26, particularly when rejection of the offer was the only logical prelude to trial.[5]

Finally Jaques elected to explain his absence in language which can, at best, be described as lacking taste and any respect for courtroom decorum:

MR. JAQUES: I wasn't here because I couldn't be here. I was not here, Judge, because I had the screaming itches in the crotch. I was so badly in need of medical care that I had been in communication with my physician a lot. Judge, I wasn't here because I would have been scratching my testicles constantly if I had been here.

Judge—

THE COURT: Mr. Jaques—

MR. JAQUES: Judge, do you understand that?

THE COURT: You don't have to be so graphic. You could have simply let the Court know that for medical reasons you were not going to be here and you could have—

MR. JAQUES: Judge, it was not a medical reason that I would have been able to frame earlier. That's one thing.

THE COURT: It doesn't seem awfully difficult to me. Is there anything else?

T.II p. 29.

Jaques also submitted an undated letter from his doctor[6] which stated in part:

... It has been recommendation (sic) to Mr. Jaques that because of the nature, location and symptoms of this ailment he should avoid to be in public places and mainly court appearances all of which could jeopardize his professional appearance....

This Court does not question the intensity of Jaques' discomfort. What is questionable is why his affliction "was not a medical reason that I would have been able to frame earlier". Even more questionable, and objectionable, is Jaques' method of excusing himself from this courtroom by claiming he was in Judge Howard's courtroom, a fact Jaques does not dispute was undeniably false.

---

**5.** Of interest is the fact that the settlement offer made on October 26 was not rejected until the following afternoon when Jaques himself called the Court.

**6.** Exhibit B.

## FINDINGS OF FACT

Attorney Leonard Jaques was trial counsel in the civil admiralty proceeding *Ahmed v. Reiss Steamship Company*, C80–506. At Jaques' request, a firm trial date of October 24, 1983 was guaranteed, however trial did not commence on that date because, at Jaques' request, and the request of his associates, the trial date was continued on three occasions to accommodate Jaques' schedule conflict with another trial in Baltimore. On October 26, 1983, twenty-two veniremen reported for jury duty in this case, but Leonard Jaques did not appear for trial. His associate, Robert Swickle represented to the Court that Jaques was in trial in Baltimore. The Honorable Joseph C. Howard, United States District Court for the District of Maryland, personally informed this Court that Jaques did not appear before him on October 26, 1983 but had been excused on October 25 so that Jaques could appear in Cleveland before this Court. Leonard Jaques caused this Court to believe that he was appearing in trial in Baltimore when, in fact, he was not.

On October 26, 1983, this Court gave oral notice that it intended to inquire into the reasons for the misrepresentations concerning Jaques' failure to appear. On November 2, 1983 written notice was issued setting the date for a hearing on December 23, 1983. The essential facts constituting the criminal contempt charged were transcribed and reduced to writing in the transcript docketed November 15, 1983 and issued to Jaques.

## CONCLUSIONS OF LAW

This Court will confine itself to considering the propriety of Jaques' conduct in light of this Court's responsibility to "protect the processes of orderly trial, which is the supreme object of the lawyer's calling". *Id.* at 13, citing *Sacher v. United States*, 343 U.S. 1, 72 S.Ct. 451, 96 L.Ed. 717 (1952), *reh'g denied,* 343 U.S. 931, 72 S.Ct. 756, 96 L.Ed. 1341 (1952).

7. See Transcript of October 26, 1983 docketed November 15 and issued to Jaques.

## NOTICE AND HEARING

Notice of a hearing into Jaques' failure to appear was issued and the hearing proceeded in compliance with Fed.R.Crim.P. 42(b) which states in pertinent part:

A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe it as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by order to show cause or an order of arrest. The defendant is entitled to a trial by jury in any case in which an act of Congress so provides....

In a contempt proceeding, reasonable notice of the charge and an opportunity to be heard in defense are "basic in our system of jurisprudence." *Taylor v. Hayes*, 418 U.S. 488, 498, 94 S.Ct. 2697, 2703, 41 L.Ed.2d 897 (1974). Accordingly, on October 26, 1983,[7] this Court specifically set forth the matters into which she intended to inquire at the hearing which was subsequently noticed for December 23, 1983. At the December 23 hearing, Jaques, who elected to appear without counsel on his behalf,[8] was given full opportunity to present evidence and testimony. The hearing comported with *Taylor v. Hayes, supra* at 500 n. 9, 94 S.Ct. at 2704 n. 9:

... all we have decided today is that a contemnor is entitled to the elementary due process protections of "reasonable notice of the specific charges and opportunity to be heard in his own behalf," ... Nowhere do we intimate that "a full-scale trial is appropriate." ... (citations omitted)

8. Baun and Swickle were represented by counsel; Jaques appeared as counsel for them.

STATUTE

Title 18 U.S.C. § 401 provides in pertinent part:

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none other, as—

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice; ...

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

Contumacious misbehavior punishable under § 401(1) must be willful, and must actually obstruct the district judge in the performance of judicial duties. *United States v. Thoreen*, 653 F.2d 1332 (9th Cir.1981), *cert. denied*, 455 U.S. 938, 102 S.Ct. 1428, 71 L.Ed.2d 648 (1982). Under § 401(3), a party may be found in contempt for disobeying an order "only if the order is clear and definite, and the contemnor has knowledge of it." *Id.* at 1339, *citing United States v. Baker*, 641 F.2d 1311 (9th Cir. 1981).

CONTUMACIOUS MISBEHAVIOR

Misbehavior punishable under § 401(1) is limited to conduct which occurs in the presence of the court "or so near thereto as to obstruct the administration of justice." Since part of the misbehavior at issue here is Jaques' failure to appear, it cannot be said that his misbehavior was in the presence of the court. However his telephonic communications on October 19, asking for a continuance, and his failure to appear on the scheduled date when he misrepresented that he was otherwise engaged before another federal judge, combine to constitute misbehavior "so near" to the presence of this Court as to fall within § 401(1). The standard for obstructive misconduct is "whether the obstruction or disruption is material." *Thoreen, supra* at 1340.

There can be no doubt that Jaques' misbehavior obstructed the administration of justice. Had Jaques appeared as scheduled on October 26, 1983, trial could have commenced, or the settlement discussions could have been more than a dilatory charade intended to project to the Court the appearance of some activity toward disposition of the case. Jaques' failure to appear, and his day-to-day continuances prevented this Court from either proceeding with Ahmed's trial or scheduling a substitute matter.

Jaques' contention that he was not trial counsel and therefore had no obligation to appear cannot diminish the willfulness of his misconduct. Jaques does not dispute that he was not in Baltimore on October 26 as he led this Court to believe, and caused his associate to represent to the Court. Neither does he dispute that he was given firm notice of a trial date which required him to be before this Court on a date certain. Jaques' own telephone call on October 19 indicates that he was aware of his obligation to attend, and he was aware that the Court was continuing the trial date solely for the purpose of accommodating him. Jaques was trial counsel, had an obligation to appear, and willfully misrepresented to this Court his reason for not attending. The effect of Jaques' misrepresentation was to delay the proceedings. To delay proceedings is to obstruct the administration of justice. *In re Dellinger*, 502 F.2d 813, 816–17 (7th Cir.1974), *cert. denied* 420 U.S. 990, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975). However, it is not merely Jaques' failure to appear which constitutes misbehavior. This Court is persuaded by the Seventh Circuit's observation that "[t]he seriousness of the misbehavior has some bearing on whether the conduct is materially obstructive." *Thoreen, supra*, at 1340. *See also, United States v. Seale*, 461 F.2d 345 (7th Cir.1972). While an attorney's failure to appear is always a serious matter, Jaques compounded the offense by misrepresenting the reason for his failure to appear. This Court regards such a misrepresentation as a very serious matter.

DISOBEDIENCE OF THE COURT'S ORDER TO APPEAR FOR TRIAL

There can be no doubt that this Court's trial order compelling trial counsel to ap-

pear for trial on October 24, 1983 was clear and definite. The continuances granted thereafter were extended at Jaques' and his associates' requests. Each time a continuance was granted, a specific date and time for commencement of trial was scheduled, and an entry was noted on the docket sheet kept by this Court's deputy clerk. *See,* Exhibit C. Jaques' allegation that this Court elected not to proceed with trial when an attorney from his office was present mischaracterizes the events of October 26, 1983. This Court is never willing to jeopardize the interests of a litigant and his case on the merits by railroading him into trial without the attorney of his choice. *See, Morris v. Slappy,* —— U.S. ——, 103 S.Ct. 1610, 1620–1623, 75 L.Ed.2d 610 (1983).

Swickle stated on the record that he had been "pressed in for this" and that Ahmed was Jaques' client. Swickle in no way represented on October 26, 1983 that he was prepared to go to trial, and despite his protestations to the contrary on December 23, 1983, it was apparent that on October 26, Swickle was not prepared to try the case. Indeed, on October 28, 1983 when Jaques finally appeared for trial and the jury was empanelled, Swickle was not in attendance and did not appear on behalf of Ahmed at all.

■ As trial counsel, Jaques was under an obligation to appear on behalf of his client on the date scheduled; substitution of an attorney not willing or not able to proceed to trial does not fulfill this obligation. Even if Jaques mistakenly believed in good faith that he had no obligation to appear, and that substitution of his associate would not hinder the Court, a defense of lack of intent to obstruct justice is without merit. "Proof of an evil motive or of an actual intent to obstruct justice is unnecessary." *Thoreen, supra* at 1342. Section 401(1) does not require specific intent; Jaques' protestation of a lack of intent to deceive the court or to obstruct justice is irrelevant. *Id.* The only intent that need be shown is that the contumacious attorney knew or should have known that his con-

duct exceeded the outermost limits of his proper role and hindered rather than facilitated the search for truth. *Ibid.* "An attorney's intent may be inferred if his conduct discloses a reckless disregard for his professional duty." *Ibid.*

At the hearing Jaques admitted that he did not accurately advise the Court of the reason for his inability to attend trial on October 26, 1983.

MR. JAQUES: Judge, I am going to tell you right now what it is. I am going to tell you why I wasn't there. I don't like the indignity that you have put me through and I think it is most inappropriate for a Court to do this. But I am going to tell you why.

I was in Baltimore trying a lawsuit and on Tuesday, before we were to be here, closing arguments finished up. *I had nothing else* and I had every intention to come here. But I had a problem.

I did not misrepresent to anybody. I am only giving this to protect the record. *I don't expect you to place any credence on anything,* but here is this. (Emphasis supplied).

\* \* \* \* \* \*

Judge, it was not a medical reason that I would have been able to frame earlier. T. II pp. 28–29. However, Jaques' statement that he did not misrepresent anything is inconsistent with his representations to Judge Howard and to this Court. It is clear that Jaques knew his representations were not accurate, and that his conduct exceeded reasonable limits in face of this Court's pressing trial calendar. His conduct demonstrated a reckless disregard for his professional duty.

■ The First Circuit's comments regarding a similarly inconsiderate attorney's behavior are appropriate: "Our narration of these proceedings reveals conduct of counsel which merits memorialization only as an example of what the bar must avoid if courts are to function." *United States v. Lespier,* 558 F.2d 624 (1st Cir.1977). Like the *Lespier* court, this Court finds Jaques' rude and irresponsible failure to

appear for trial on October 26, 1983 is clearly punishable as criminal contempt under 18 U.S.C. § 401(3). *Id.* at 628. Jaques' unabashed prevarication regarding his whereabouts is punishable under § 401(1). Unfortunately, the First Circuit was unquestionably correct when it stated: "Merely punishing the delinquent attorney does not solve the problem for the court whose calendar has been disrupted." *Ibid.*

Allowing Jaques to escape all sanctions after such misbehavior would, however, encourage chaos, reward reprehensible tactics, and breed contempt for court scheduled proceedings.

■ There can be no doubt that Jaques deliberately and recklessly disregarded his obligation to the court. Such intentional disrespect is sanctionable by criminal contempt. *DeVaughn v. District of Columbia,* 628 F.2d 205 (D.C.Cir.1980). An unavoidable schedule conflict caused by an unexpectedly long trial is understandable. This Court is always willing to make reasonable accommodations in those instances. This Court cannot tolerate counsel's intentional refusal to accommodate the Court after so many schedule adjustments were gladly made at his request. Jaques' attitude conveyed "the unrealistic if not contemptuous expectancy that the court, despite elaborate advance scheduling of a trial, would at the last moment subordinate the interests of all others to the personal plans of a laywer who had not taken the smallest step of giving notice earlier ..." *U.S. v. Lespier, supra* at 627–628. Jaques clearly had personal problems which prevented him from complying with this Court's order to appear in Cleveland on Wednesday, October 26, 1983. He willfully deceived this Court and the court in Baltimore for unknown reasons. He did so at the expense of defense counsel's time and this Court's time and the time of a twenty-two member venire panel, who were paid at taxpayer's expense to appear for a trial which did not proceed as scheduled due to the inconsideration of one man.

■ This Court concludes that Leonard C. Jaques violated this Court's order to appear for trial on October 26, 1983 and is in contempt of court.

Accordingly, Jaques should be sanctioned. While order cannot be restored to the court's calendar through the payment of fines, compensation can be made to the victims of Jaques' prevarication. The fine is intended to be remedial in nature.

This Court orders Jaques to pay to the Clerk of Court the costs of compensating the twenty-two member venire panel at the usual rates of compensation of $30 per day plus 20½¢ per mile for transportation costs and $4 per day parking fees, a total of $920. The fine is to be paid within forty-five (45) days of the date of this Order.

In addition, Jaques is ordered to reimburse defendant Reiss Steamship Company for its counsel's hotel and attorney's fees for October 26, 1983. Mr. Dunn is directed to file an affidavit and accounting of his expenses for the evening of October 25 and attorney fees at his usual hourly rate for time expended on October 26, 1983.

IT IS SO ORDERED.

EXHIBIT A

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

ALI S. AHMED,

    Plaintiff,

—vs—             No: C 80 506

REISS STEAMSHIP COMPANY,

    Defendant.

## PLAINTIFF'S PRE–TRIAL BRIEF

TRIAL COUNSEL:

Leonard C. Jaques, THE JAQUES ADMIRALTY LAW FIRM, P.C., 1370 City National Bank Building, Detroit, Michigan 48226.

STATEMENT OF NATURE OF ACTION:

The subject cause is personal injury in nature and Plaintiff alleges it arises out of an incident of injury occurring while Plaintiff was employed by Defendant and assigned in the capacity of gatemen to Defendant's vessel, "S.S. Richard Reiss" as

owned, operated, maintained or otherwise controlled and navigated by Defendant herein. Further, Plaintiff contends that said injuries resulted from or were proximately caused by the negligence of Defendant and breach of warranty of the shipowner to provide a reasonably seaworthy vessel and a safe place in which to perform his labors, said acts and/or omissions resulting in a bifurcated cause of action under the Jones Act and the provisions of the General Admiralty and Maritime Law.

JURISDICTION:

This Court obtains jurisdiction over the persons and subject matter of the above entitled action by reason of the . . . .

EXHIBIT B

LUIS A. NINO, M.D., FAAFP, P.C.

27201 RYAN ROAD

WARREN, MICHIGAN 48092

TELEPHONE 575–9330

To Whom it May Concern:

This is to certify that I have been the attending physician of Mr. Leonard C. Jaques for several years. I have treated Mr. Jaques for Tinea Cruris, a chronic disease of the skin of the groin which causes exacerbations of severe Pruritus or itching off and on. It has been recommendation to Mr. Jaques that because of the nature, location and symptoms of this ailment he should avoid to be in public places and mainly court appearances all of which could jeopardize his professional appearance.

I was contacted by a pharmacist on October 24, 1983 from Baltimore, Maryland concerning medication for temporary relief and I did prescribe Mycostatin powder and Crisactin capsules to relieve the itching. On the following day as there was not much relief of the itching, I prescribed Benadryl and later received a call from him that he was drowsy and had to go to Court. My advice at that time to him was to refrain from his Court appearance and I promised to write this letter for him.

Sincerely,

/s/ Luis A—— Nino, M.D.

Luis A. Nino, M.D.